Frank A. Handzel and Cecelia Handzel, Plaintiffs-Appellees, v. John G. Bassi and Rosina Bassi, Defendants-Appellants.

Gen. No. 10,476.

Opinion filed May 16, 1951. Released for publication June 1, 1951.

PHILIP A. COMIANO, of Chicago, and SNYDER, CLARKE & DALZIEL, of Waukegan, for appellants; GERALD C. SNYDER, of Waukegan, of counsel.

HALL, MEYER & CAREY, of Waukegan, for appellees; WESLEY G. CAREY, of Waukegan, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

The complaint in this case which was filed on June 9, 1950, alleged that on September 18, 1948, the plaintiffs entered into a written contract with defendants for the purchase of certain described property located in Lake county for $21,500. A photostatic copy of the contract was attached to and made a part of the complaint. The contract provided for a down payment of $5000, and the balance of the purchase price was to be paid in installments of $3,500 each on October 1, 1949, October 1, 1950, October 1, 1951, October 1, 1952, and a final payment of $2500 was to be made on October 1, 1953. All deferred payments were to draw 4% interest. The contract further provided that after one-half of the purchase price had been paid, defendants would convey the property to plaintiffs and plaintiffs would deliver to defendants a purchase-money mortgage for the balance.

Among other things, the contract provided: "that the Purchaser shall not transfer or assign this agreement or any interest therein, without the previous written consent of the Seller, and that any such assignment or transfer, without such previous written consent, shall not vest in the transferee or assignee any right, title or interest herein or hereunder or in said premises, but shall render this contract null and void, at the election of the Seller; and that the Purchaser will not sublet or lease said premises, or any part thereof, for any purpose, except upon the previous written consent of the Seller."

The complaint further alleged that the purchasers paid $5000 upon the execution of the contract and $3500, plus interest, on October 1, 1949, and have fully complied with the contract and kept the premises in excellent condition and spent money in improving and maintaining the premises; that on February 3, 1950, the plaintiffs entered into a written agreement with Josephine Bellcom by which they agreed to sell the real estate involved herein to her for $23,500, of which amount $6000 was paid down and further payments were to be made of $200 per month beginning May 10, 1950; it was further alleged that on March 21, 1950, defendants served a notice on plaintiffs setting out certain portions of the contract and alleging that they had violated these provisions and had transferred or assigned their interest in their contract without previous written consent of the defendants and had made certain structural changes by changing a window into a door and constructing an outside wooden stairway and notifying them that unless all these defaults were corrected by April 22, 1950, defendants would declare the contract null and void and that the payments already made would be retained as liquidated damages.

It was further alleged that on May 8, 1950, defendants served a notice on plaintiffs to the effect that inas-

much as plaintiffs had failed to correct these defaults, defendants declared the contract null and void, forfeited and determined, and that all payments which plaintiffs had made were forfeited and would be retained by defendants as liquidated damages and that defendants would proceed to recover possession of the premises.

The complaint further alleged that on May 8, 1950, plaintiffs were served with another notice to the effect that the contract of September 18, 1948, had been cancelled and demanding that possession of the premises be surrendered to defendants on or before June 10, 1950. It was further alleged that on June 1, 1950, one of the plaintiffs tendered to one of the defendants a money order in the amount of $4,020, representing $3,500 which would become payable October 1, 1950, plus interest on $13,000 at 4% to October 1, 1950, and demanded a warranty deed from defendants and offered to execute a purchase-money mortgage for the unpaid balance. It was further alleged that the plaintiffs were ready, willing and able to pay said sum of $4,020 and continue said offer and tender. The prayer of the complaint was that a temporary injunction issue forthwith restraining defendants from forfeiting or attempting to forfeit the original contract and that upon the hearing the temporary injunction be made permanent and that the original contract be declared to be in full force and effect and defendants ordered to specifically perform the same.

On June 19, 1950, upon notice and a hearing, a preliminary injunction was issued as prayed. Thereafter, on September 28, 1950, a motion was made by appellants to dissolve the temporary injunction. This motion was, on October 19, 1950, denied, and this appeal seeks to reverse that interlocutory order.

The record further shows that on September 29, 1950, before the denial of the motion to dissolve the

284

injunction, appellees deposited with the clerk of the court $4,219.28 representing $3,500 principal due October 1, 1950, plus interest and taxes. The record further discloses that on November 27, 1950, appellees notified appellants that appellees had a commitment and had borrowed sufficient money to pay appellants the contract price in full if appellants would give plaintiffs a deed and good title as required by the contract.

It is insisted by counsel for appellants that the allegations of the complaint show that appellees had violated their contract with appellants by assigning the contract without appellants' consent, and, because of this violation of the contract, appellants had properly forfeited the contract and appellees are not entitled to an injunction.

Counsel for appellees argue that the contract of sale by them to Josephine Bellcom, as set forth in the complaint, is a separate, independent transaction and does not violate any of the provisions of the contract with appellants. Counsel for appellees also contend that under the facts alleged in the complaint and applying thereto the general principle of law that equity abhors a forfeiture, the chancellor very properly issued the temporary injunction.

The temporary injunction is based on the complaint, and the question is whether or not the facts set up in the complaint authorize the injunction granted by the trial court. Counsel for appellants insist that the separate contract entered into by appellees with Josephine Bellcom was in effect an assignment of the contract which it is now sought to specifically enforce. Counsel cite and rely on the case of *Kew v. Trainor,* 150 Ill. 150, which held that a provision forbidding the assignment of a lease without the consent of the lessor was a condition and not merely a covenant and that the right of re-entry on violation of that provision was enforceable. Counsel also calls to our attention

*Traders Safety Building Corporation v. Shirk,* 237 Ill. App. 1. The court there states the general principles of law with reference to covenants against assignments in leases, and at page 11 says: "That courts both of law and equity abhor forfeitures and that covenants against assignments are not favored and will be strictly construed in order to prevent forfeitures, are propositions which may well be considered elementary. *Chadwick v. Parker,* 44 Ill. 326; *Palmer v. Ford,* 70 Ill. 369; *Postal Tel. Cable Co. v. Western Union Tel. Co.,* 155 Ill. 335. That the unauthorized assignment of lease in breach of its covenants gives a landlord the right to terminate it and that equity will not grant relief against such forfeiture is also settled. *Kew v. Trainor,* 150 Ill. 150; Pomeroy on Equity Jurisprudence, 4th ed., Vol. 1, p. 861, secs. 453, 454; and *Barrow v. Isaccs,* (1891) 1 Q. B. 417."

The policy of the law with reference to restraints on alienation is stated in *Postal Telegraph Co. v. Western Union Telegraph Co.,* 155 Ill. 335, a case involving the construction of a lease. The court stated at pages 347–348: "Restrictions on the power of alienation have long been unfavored, and the policy of this State has ever been hostile to them, and this principle is so firmly engrafted on our polity that such covenants will be construed with the utmost strictness, to the end that the restraint shall not be extended beyond the express stipulation; and all doubts, as a general rule, must be resolved in favor of a free use of property and against restrictions."

In *Waukegan Times Theatre Corp. v. Conrad,* 324 Ill. App. 622, another case involving a lease, this court stated: (p. 631) "That covenants against assignments will be strictly construed in order to prevent forfeitures is an elementary proposition of law."

Under the contract in this case appellants were to receive $21,500 for this property and after $10,750

had been paid, appellants were to deliver appellees a warranty deed and appellees were to give appellants a purchase-money mortgage for the remaining unpaid balance. Appellants' basic right under the contract was to get the money contracted to be paid for the property. Appellees offered to do this before the complaint was filed and repeated the offer in the complaint and appellees later paid into court the amount due.

In *Moore v. Gariglietti*, 228 Ill. 143, the court in construing a contract to sell real estate which, however, did not contain any restriction on the sale by the purchaser but where the purchaser assigned the contract and the seller refused to convey to the assignee the court held such contracts are assignable and granted specific performance.

In *Johnson v. Eklund*, 72 Minn. 195, 75 N. W. 14, the court held that the stipulation against assignment in a contract of sale was collateral to the main purpose of the contract and designed as a means of securing and enforcing performance of what was undertaken by the vendee. It also stated that when the vendor had received his purchase money under the contract he has received all he was entitled to and all that the provision against an assignment was intended to secure.

In *Grigg v. Landis*, 21 N. J. Eq. 494, the court held that the prohibition of an assignment in a contract was not the main purpose of the contract but a mere incident to and security for the main purpose.

In *Cowart v. Singletary*, 140 Ga. 435, 79 S. E. 196, the purchaser gave a warranty deed to a third party. The court noted that this was no transfer of the bond involved which by its terms was non-transferable, and the court there held that restraints on alienation forbidding an assignment of a contract were invalid.

In *Cheney v. Bilby*, 20 C. C. A. 291, 36 U. S. App. 720, 74 Fed. 52, it was held that the provision in the agreement forbidding assignment of the contract with-

out the written consent of the vendor was inserted to enable the vendor to control the selection of the assignee so long as the agreement remained unperformed or so long as he was interested in the choice of an assignee who had the ability to do what remained to be done. At pages 64–65, the court said: "Inasmuch, then, as the provision was only intended to secure the faithful performance of the agreement by the purchaser or his assignee, it would be both unreasonable and inequitable to hold that Cheney, the vendor is privileged to take advantage of the provision, to avoid performance on his part, after the entire amount of the purchase money has been promptly paid or tendered. We must assume that whatever may be the fact in this regard, the provision against assigning the contract without the vendor's consent was inserted therein for an honest and legitimate purpose; that is to say for the purpose of securing the punctual payment of the purchase money, and a full compliance with other executory agreements, either by the original purchaser or by his assignee. Therefore when it appears that the object has been accomplished, that the purchase money has been promptly paid or tendered to the vendor, and that nothing remains to be done but to execute a deed to the purchaser, the vendor cannot be heard to allege, as an excuse for not making a conveyance, that at a certain time the purchaser of the land assigned the contract of purchase without his consent. It would be trifling with justice to tolerate a defense of that character after the purchaser's engagements have been performed in the time and manner stipulated in the contract of sale."

█ In the instant case, the agreement of appellees to sell the property to Josephine Bellcom was an independent contract. Under it appellees were to convey their title to the property to Josephine Bellcom, if, as and when they acquired it. The contract with

288

Josephine Bellcom in no way released them from their original contract with appellants. They were still bound to perform the original contract and this, the record shows, they have offered and are able to do.

█ If, however, the contract with Josephine Bellcom be treated as an assignment of the original contract with appellants, the provision for a forfeiture in the original contract on account of such an assignment is a harsh one. It should not be enforced where the appellees offer and are able to complete the performance of the contract. The stipulation against an assignment in the contract with appellants was intended to safeguard performance on the part of the appellees and when it appears that full performance is offered by appellees under the terms of the contract it is no abuse of discretion for the Chancellor to protect the rights of appellees pending the hearing of the case on its merits.

Under the authorities cited, we are clearly of the opinion that the Chancellor did not err in granting the preliminary injunction in this case and properly denied the motion to dissolve it. The order appealed from is therefore affirmed.

*Order affirmed.*