JOSEPH M. GATTON, Plaintiff-Appellant, *v.* WILLIAM PAGE *et al.*, Defendants-Appellees.

Fifth District   No. 76-76

Opinion filed December 23, 1976.

EBERSPACHER, J., specially concurring.

Edward L. Welch, of Edwardsville, for appellant.

Arthur F. Wendler, of Troy, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff Joseph M. Gatton appeals from an order of the circuit court of Madison County which denied him specific performance of a contract for the sale of a lot in Dunlap Lake Subdivision entered into between him and defendant Gussie McClelland. The court also refused to issue any injunction prohibiting McClelland from executing a conveyance to the same lot to defendant William Page.

On June 25-26, 1975, Joseph Gatton and Gussie McClelland executed a sales contract for the purchase by Gatton of Lot 51 in Dunlap Lake Subdivision for $5500. The contract contained a handwritten provision that it was "subject to Lake Association rules." According to these rules, which all parties agree refer to restrictions adopted by the Dunlap Lake Property Owners Association and recorded by the recorder of deeds for Madison County effective January 1, 1972, the following resale conditions were in effect for owners in the subdivision:

> "13. No resale of lots, or part of any lot, shall be consummated without first giving Ora Jane Coultas, Robert Coultas, or their heirs, executors, administrators and assigns, the Board, *and the Owners of Record of adjoining lots*, ten (10) days written notice of an intention to sell and the terms of such sale, and *those given notice, in the case of the Board, the Association, shall have a right to purchase* such lot, lots or part of such lot for a period of ten (10) days after the date of receipt of said notice." (Emphasis added.)

Pursuant to these rules, on June 30, 1975, the real estate agency handling this transaction sent notice to all the required parties, including defendant Page who was the owner of record of the adjoining lot. Page notified the real estate company within the regulation of time of his intention to purchase the lot in question on the same terms that Gatton had contracted

for, confirming his readiness to perform in a letter dated July 11, 1975. On July 16, 1975, this suit was instituted.

■■ Appellant Gatton contends that the restrictions found in section 13 of the Lake Association rules represent an unreasonable restraint on the alienation of the property in question and are therefore void as against public policy. He also contends that even if this court were to uphold the validity of these restrictions, the plain terms of the restrictions as set forth in the emphasized portion of section 13 quoted above do not give the adjoining lot owner the right to purchase the property even though they give him a right to receive notice of an intention to sell. In view of our finding that the agreement does not give the adjoining lot owner a right to purchase the lot in question, we shall not reach the question of the validity of the resale restrictions found in the Lake Association rules.

■■ With the words "those given notice, in the case of the Board, the Association, shall have a right to purchase," section 13 of the Lake Association rules purports to grant a preemptive right to certain parties to purchase property once the owner has formulated an intention to sell. We believe that these words clearly grant this right only to the Board or the Association and that from the face of the instrument alone a person in the position of Gatton would not reasonably be put on notice that an adjoining landowner would have a right to purchase the property in question. Indeed, the portion set off by commas would appear to enumerate which parties among those given notice would have a right to purchase.

While evidence was introduced before the trial court that a typographical error appears to have occurred in the transcription of the rules of the subdivision, which resulted in the deletion of a line following the words "in the case of the Board, the Association," no evidence was introduced to indicate the exact nature of the mistake nor the contents of the deleted line. Furthermore, it is generally recognized that while mistakes will be corrected or relieved against as between parties to the original transaction and those claiming under them with notice, the courts will not grant relief against mistakes so as to affect the intervening rights of third parties or against purchases for value without notice. (54 Am. Jur. 2d *Mistake, Accident, or Surprise* §21 (1971).) In an analogous situation, the Supreme Court of Illinois long ago upheld this view in the case of *Snyder v. Partridge*, 138 Ill. 173, 29 N.E. 851. Under the facts of that case, a mortgage was recorded which mistakenly described the encumbered land as the "north" one-half of a certain section rather than the "south" one-half of the section. The mortgagor had no interest in the "north" tract. The "south" tract eventually changed hands and since no mortgage on this tract was recorded and no evidence was introduced which established

actual knowledge of the mortgage on the part of the final buyer of the property, the court refused to correct the mistake and allow the mortgagee to foreclose against the bona fide purchaser for value.

In this case no evidence was introduced which would suggest that the appellant had actual knowledge of any preemptive rights of the adjoining lot owner. Appellees argue that the words as written obviously do not make sense and that the only sensible interpretation would be one giving a right to purchase to the adjoining lot owners. To bolster this view appellees suggest that a right to notice is meaningless without a right to purchase. However, as stated before, it is not strained or unreasonable to interpret the language of the instrument as enumerating which parties, among those given notice, are granted preemptive rights. Even if we were to find that awkward language might give notice of the existence of a mistake, the instrument itself gives no indication that adjoining lot owners are intended to have any rights not specifically enumerated. The right to notice of adjoining lot owners will also support the interpretation that any preemptive rights must be exercised only through the Board or Association. The courts of Illinois have long adhered to the policy that agreements which place restrictions on the power of alienation of property will be strictly construed so that such restrictions will not be extended beyond what is expressly stipulated and " '* * * all doubts should, as a general rule, be resolved in favor of a free use of property and against restrictions.' " *Postal Telegraph-Cable Co. v. Western Union Telegraph Co.*, 155 Ill. 335, 348, 40 N.E. 587; *Handzel v. Bassi*, 343 Ill. App. 281, 99 N.E.2d 23; *Staley v. Mears*, 13 Ill. App. 2d 451, 142 N.E.2d 835.

For the foregoing reasons the ruling of the lower court is reversed and this matter is remanded for action consistent with this opinion.

Reversed and remanded.

CARTER, P. J., concurs.

Mr. JUSTICE EBERSPACHER, specially concurring:

I do not agree that the agreement does not give the adjoining lot owner a right to purchase; nor do I agree that the language used grants the preemptive right to purchase only to the Board or the Association as the majority finds. I concur in the result because of the ambiguity created by the language, and to enforce a restraint on alienation, the language creating it should be clear and concise, in a case in which there is no evidence that an innocent purchaser had any actual knowledge of the preemptive rights of an adjoining owner.