First Division
June 18, 2007

No. 1-06-1864

| | |
|---|---|
| CLARENDON AMERICA INSURANCE COMPANY, a New Jersey Corporation, | ) Appeal from the Circuit Court ) of Cook County |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| 69 WEST WASHINGTON MANAGEMENT LLC, an Illinois Limited Liability Corporation, and COUNTY OF COOK, a Body Politic and Corporation, | ) ) ) |
| | ) |
| Defendants-Appellees | ) 04 CH 10575 |
| | ) |
| | ) |
| (Scottsdale Insurance Company, Intervenor-Appellant; | ) ) |
| | ) |
| B.G.K. Security Services, Inc., an Illinois Corporation, and Aargus Security Systems, Inc., an Illinois Corporation Defendants). | ) Honorable ) Julia Nowicki, ) Judge Presiding. |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Clarendon America Insurance Company (Clarendon) filed a declaratory

judgment action seeking a determination that it owed no duty to defend or indemnify defendants

69 West Washington Management, LLC (69 West), and County of Cook (Cook) in several

underlying lawsuits arising out of the October 17, 2003, fire that occurred at a building owned by

Cook and managed by 69 West, located at 69 West Washington Street in Chicago. Clarendon

issued a commercial general liability policy to defendant B.G.K. Security Services, Inc. (BGK),

to which 69 West and Cook sought coverage as "additional insureds." Clarendon filed a motion

for summary judgment and 69 West and Cook filed cross-motions for summary judgment in the

1-06-1864

trial court. Intervenor Scottsdale Insurance Company (Scottsdale) issued an excess insurance policy to BGK and intervened in this action also seeking a declaration that it had no duty to defend 69 West and Cook. The court denied Clarendon's motion and granted 69 West and Cook's motions.[1]

Clarendon and Scottsdale appeal, arguing that: (1) the trial court erred in holding that 69 West and Cook qualify as "additional insureds" under BGK's policy with Clarendon; and (2) 69 West and Cook are not "additional insureds" because the blanket additional insured endorsement in the Clarendon policy applies only to liability "arising solely out of" BGK's services.

On April 1, 2002, Aargus entered into a contract with 69 West, acting as the manager and agent of Cook, to provide security guard service to the commercial high-rise building located at 69 West Washington Street in Chicago. That contract, entitled "Agreement with Service Contractor" (hereafter, 69 West/Aargus Contract), provided that Aargus "shall be required to satisfy such insurance requirements as are set forth in Exhibit D." Exhibit D provided that Aargus was to purchase and maintain specific types of insurance, including a commercial general liability insurance in the amount of at least $1 million and excess liability insurance in the amount of at least $5 million. Aargus was required to name 69 West and Cook as additional insureds in those policies. Finally, Exhibit D of the 69 West/Aargus Contract required Aargus to "cause each subcontractor of any tier to purchase and maintain insurance as required from [Aargus] including the Additional Insureds."

---

[1] In the same written order, the trial court granted summary judgment in favor of Clarendon against defendant Aargus Security Systems, Inc (Aargus). Aargus appealed that order in case No. 1-06-2121.

1-06-1864

On June 17, 2002, Aargus and BGK entered into a contract entitled "Joint Venture Agreement, 69 West Washington Management Company, L.L.C., 69 West Washington, Chicago, IL 60602" (hereafter, Aargus/BGK Agreement) in which the parties agreed to jointly provide security guard service at the 69 West Washington building. The Aargus/BGK Agreement stated:

> "They hereby constitute themselves as Joint Ventures for the purpose of performing and completing the Contract, but not for any other purpose. It is expressly understood that this Agreement contemplates only the furnishing and performance of the work necessary for the completion of the Contract, and that by entering this Agreement, the parties are not making any partnership agreement or permanent joint venture agreement to bid or undertake any contract(s) other than the aforementioned Contract. Nothing in this Agreement shall be construed as a limitation of the powers or rights of either party hereto to carry on its separate business for its sole benefit. Nor shall anything in this Agreement limit or prohibit the formation of additional joint ventures between the parties for the purpose of performing and completing any separate, unrelated contract(s)."

The Aargus/BGK Agreement also provides that the obligations under "the Contract shall be joint and several, unless otherwise agreed herein." The Aargus/BGK Agreement stated that "B.G.K. Security Services, Inc. shall serve as Aargus' exclusive subcontractor under the

3

Contract." The Aargus/BGK Agreement does not define to what the term "Contract" is referring. The only mention of insurance is in paragraph 16, which state: "All insurance that may from time to time be required shall be obtained in such manner as the parties hereto agree."

BGK obtained a commercial general liability policy from Clarendon, effective January 21, 2003, to January 21, 2004. The Clarendon policy provided $1 million of liability coverage per occurrence with a $5 million general aggregate limit. The Clarendon policy contains a "Blanket Additional Insured Endorsement" (additional insured endorsement), which states, in relevant part:

> "WHO IS AN INSURED (Section II) provision of the Policy is
> amended to include as an insured any person or organization
> (called 'additional insured') to whom you are obligated by valid
> written contract to provide such coverage, but only with respect to
> liability for 'bodily injury' or 'property damage' arising solely out
> of 'your work' on behalf of said additional insured for which
> coverage is provided by this policy."

"Your work" is defined in the Clarendon policy as "work or operations performed by you or on your behalf" and includes "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work' " and "the providing of or failure to provide warnings or instructions."

Scottsdale issued an excess liability policy to BGK, effective August 1, 2003, to January 21, 2004. The Scottsdale policy "is excess of and follows form to the Clarendon policy."

1-06-1864

On October 17, 2003, a fire occurred at the building located at 69 West Washington, owned by Cook and managed by 69 West. As a result of the deaths and injuries that occurred in the fire, 22 lawsuits were filed in the circuit court of Cook County and were consolidated under case No. 03 L 12520 (underlying lawsuits). 69 West, Cook, Aargus and BGK were named as defendants, third-party defendants, and/or counterdefendants in the underlying lawsuits.

69 West, Cook, Aargus, and BGK tendered the defense in the underlying lawsuits to Clarendon. In July 2004, Clarendon filed the instant suit seeking a declaration that the Clarendon policy issued to BGK did not include 69 West and Cook as additional insureds. Scottsdale was granted leave to intervene in the circuit court and filed its own complaint for declaratory judgment. In January 2006, Clarendon filed a motion for summary judgment, and in February 2006, 69 West and Cook filed cross-motions for summary judgment. 69 West and Cook also filed an affidavit from Aargus' chief executive officer (CEO), Janet Joyce. In her affidavit, Joyce stated that she was CEO in 2002 and entered into both the 69 West/Aargus Contract and the Aargus/BGK Agreement on Aargus' behalf. Joyce also said that in the Aargus/BGK Agreement, the references to "Contract" meant the 69 West/Aargus Contract. Scottsdale filed a brief in support of Clarendon's motion. Clarendon moved to strike the Joyce affidavit. In April 2006, the trial court granted 69 West's and Cook's cross-motions for summary judgment and denied Clarendon's motion. In its ruling, the trial court found that it was unnecessary to consider the motion to strike because the Aargus/BGK Agreement was unambiguous. In June 2006, the trial court found that pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), there was no just reason to delay enforcement or appeal of the April 2006 order. This appeal followed.

5

1-06-1864

Clarendon and Scottsdale argue on appeal that the trial court erred in reading the 69 West/Aargus Contract and the Aargus/BGK Agreement together to find a valid written contract and that 69 West and Cook were additional insureds under the Clarendon policy.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). We review cases involving summary judgment *de novo*. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998). "As in this case, where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law." Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 335, 339 (2005).

Clarendon and Scottsdale contend that the Aargus/BGK Agreement, standing alone, does not trigger coverage for 69 West and Cook under the additional insured endorsement. They maintain that the Aargus/BGK Agreement "is devoid of any express reference" to the 69 West/Aargus Contract and the trial court erred in reading the Aargus/BGK Agreement with the 69 West/Aargus Contract.

"When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy."

6

Central Illinois Light Co. v. Home Insurance Co., 213 Ill. 2d 141, 153 (2004). An insurance contract is to be construed as a whole, giving effect to every provision because it must be assumed that every provision was intended to serve a purpose. Central Illinois Light Co., 213 Ill. 2d at 153. " If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." Central Illinois Light Co., 213 Ill. 2d at 153. "A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning." William Blair & Co., LLC v. FI Liquidation Corp., 358 Ill. App. 3d 324, 334 (2005). "A contract is not ambiguous, however, if a court can ascertain its meaning from the general contract language." William Blair, 358 Ill. App. 3d at 334. "The mere fact that the parties disagree as to the meaning of a term does not make that term ambiguous." William Blair, 358 Ill. App. 3d at 334.

Here, the additional insured endorsement in Clarendon's policy extends coverage to those that BGK, as the named insured, is obligated by valid written contract to provide coverage. The parties do not contend that BGK was a party to the 69 West/Aargus Contract; rather, the only contract BGK is a party to is the Aargus/BGK Agreement. Yet, 69 West and Cook assert that this court should read the two documents together even though the named insured, BGK, is only a party to one document. There is nothing within the four corners of the Aargus/BGK Agreement regarding an obligation undertaken by BGK to provide additional insured coverage for 69 West and Cook. Instead, paragraph 16 leaves insurance requirements open for a future agreement.

"It is well settled that a court, when construing a contract, should ascertain the intent of the parties and give effect to that intent." Eichengreen v. Rollins, Inc., 325 Ill. App. 3d 517, 521

7

1-06-1864

(2001). Illinois follows the "four corners rule" for contract interpretation, in that, " '[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.' " Air Safety, Inc. v. Teachers Realty Corp., 185 Ill. 2d 457, 462 (1999), quoting Western Illinois Oil Co. v. Thompson, 26 Ill. 2d 287, 291 (1962).

We find the analysis in Liberty Mutual Fire Insurance Co. v. St Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 335 (2005), to be helpful. In that case, the Central Illinois Public Service Company (CIPS) and Dover Elevator Company (Dover) entered into two service contracts for Dover's work to modernize and upgrade two elevators in a CIPS facility. Dover obtained a CGL insurance policy through Liberty Mutual Fire Insurance Company (Liberty). An elevator accident occurred at the CIPS facility and a personal injury lawsuit followed. Liberty filed a declaratory judgment action seeking a determination that it did not have to defend CIPS under Dover's policies, and CIPS' insurer, St. Paul Fire and Marine Insurance Co., filed a counterclaim requesting the trial court to find that Liberty had a duty to defend CIPS. On summary judgment, the trial court ruled in favor of Liberty. Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 337-38.

On appeal, the reviewing court considered a similar blanket additional insured endorsement that included " 'any person, organization, state or other political subdivision, trustee or estate for whom you have agreed in writing to provide liability insurance' " alongside the service contracts between Dover and CIPS. Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d

8

at 341. The service contracts did not outline the insurance requirements, but instead incorporated the attached insurance specifications. Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 341. The insurance specifications provided that "contractors such as Dover 'will secure, maintain and provide evidence' of 'Comprehensive General Liability insurance for all claims for personal injury, bodily injury, including death, and property damage which may arise from the operations under this contract.' " Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 341. The court found that the contracts did not satisfy the endorsement because "there was no language in the insurance provision or insurance specifications section that obligated Dover to add CIPS as an additional insured on the CGL policy." Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 342. Rather, the insurance specifications only required Dover to provide for its own insurance. Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 342.

Under the Aargus/BGK Agreement, the parties agreed in paragraph 16 that "all insurance that may from time to time be required shall be obtained in such manner as the parties hereto agree." Nothing in that statement obligates BGK to obtain coverage for anyone. 69 West and Cook contend that this court should read the 69 West/Aargus Contract in conjunction with the Aargus/BGK Agreement to find such an obligation on BGK's part. The problem with that contention is that the Aargus/BGK Agreement does not explicitly incorporate the parties' intention to be bound by the terms of the 69 West/Aargus Contract. "In order for a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract." Board of Managers of Chestnut Hills Condominium Ass'n v. Pasquinelli, Inc., 354 Ill. App. 3d 749, 755 (2004). In that case, the

9

reviewing court declined to enforce an arbitration clause contained in a warranty agreement for a dispute arising from a purchase agreement that mentioned the existence of the warranty agreement, but did not incorporate the warranty agreement. Pasquinelli, Inc., 354 Ill. App. 3d at 755.

Although we recognize that Illinois courts have read two contracts together when the "two instruments were executed by the same contracting parties in the course of the same transaction and [they] must be considered together and construed with reference to one another because they are one contract" (Bank of Chicago v. Park National Bank, 266 Ill. App. 3d 890, 898-99 (1994)), that general principle is not applicable to the instant case. Here, the two agreements were not entered into by the same parties nor were they executed in the course of the same transaction. Since the Aargus/BGK Agreement does not show a clear intention to incorporate the 69 West/Aargus Contract, the court cannot read the Aargus/BGK Agreement in conjunction with the 69 West/Aargus Contract.

69 West and Cook assert that the Aargus/BGK Agreement includes typographical errors that should have referred to the 69 West/Aargus Contract. The Aargus/BGK Agreement makes numerous references to a "Contract," but does not define the term. Clarendon and Scottsdale assert in their reply brief that the term "Contract" means the "Security Guard Contract" that is mentioned in paragraph 2. That paragraph states, in relevant part:

> "2. <u>Joint Venture Business.</u> The written Security Guard
>
> Contract entered into the (Date) <u>June 17, 2002</u> between Aargus
>
> Security Systems, Inc. and <u>B.G.K. Security Services, Inc.</u> relating

10

1-06-1864

> to the provisions of the security guard services at <u>69 West</u>
>
> <u>Washington</u> shall be entered into by Aargus on behalf of the Joint
>
> Venture." (Emphasis in original.)

As written, this sentence in paragraph two refers to the Aargus/BGK Agreement only. None of the parties assert that a second agreement exists between Aargus and BGK to which paragraph 2 is referring. The Aargus/BGK Agreement defines references to "Agreement" as meaning that specific contract. 69 West and Cook respond that paragraph 2 was incorrectly completed and should have referred to the 69 West/Aargus Contract. 69 West and Cook urge this court to unilaterally correct these alleged mistakes and recognize an intention for BGK to be held accountable for the insurance provisions in the 69 West/Aargus Contract. 69 West and Cook deny that this argument requires reformation of the Aargus/BGK Agreement. We disagree.

A written contract may be reformed to reflect the intention of the parties and the agreement between them. <u>Suburban Bank of Hoffman-Schaumburg v. Bousis</u>, 144 Ill. 2d 51, 58 (1991). " 'An action to reform a written agreement rests upon a theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake of one side and fraud on the other, some provision agreed upon was omitted, and the action is to so change the instrument as written as to conform it to the contract agreed upon, by inserting the provisions omitted or striking out the one inserted by mutual mistake.' " <u>Suburban Bank</u>, 144 Ill. 2d at 58-59, quoting <u>Harley v. Magnolia Petroleum Co.</u>, 378 Ill. 19, 28 (1941). "It is assumed that the parties' written agreement expresses their mutual intentions, and this conclusion will not yield to any other unless the contrary evidence is clear and convincing." <u>Suburban Bank</u>, 144 Ill.

11

2d at 59.

Here, neither party to the Aargus/BGK Agreement is involved in this appeal. Instead, a third party is seeking reformation to bind another third party to the contract. In Gatton v. Page, 44 Ill. App. 3d 559 (1976), the Fifth District refused to reform a document to the detriment of an innocent third party. There, the purchaser sought specific performance of a sales contract for property in a subdivision. Gatton, 44 Ill. App. 3d at 560. The contract was subject to the subdivision's association rules and one of the rules required the seller of any property in the subdivision to give written notice of the sale to certain individuals, including the adjacent landowners, 10 days prior to the date of the sale. Gatton, 44 Ill. App. 3d at 560. The rule also allowed for a right to purchase the property within that 10-day period, but there was a typographical error which excluded the right to purchase from the adjacent landowners. Gatton, 44 Ill. App. 3d at 561. The reviewing court declined to reform the rules because it would negatively affect the purchaser when no evidence was introduced that the purchaser was aware of the right to purchase by adjacent landowners. Gatton, 44 Ill. App. 3d at 562. The Gatton court held that "[e]ven if we were to find that awkward language might give notice of the existence of a mistake, the instrument itself gives no indication that adjoining lot owners are intended to have any rights not specifically enumerated." Gatton, 44 Ill. App. 3d at 562. "[I]t is generally recognized that while mistakes will be corrected or relieved against as between parties to the original transaction and those claiming under them with notice, the courts will not grant relief against mistakes so as to affect the intervening rights of third parties ***." Gatton, 44 Ill. App. 3d at 561.

We find the reasoning behind <u>Gatton</u> to be applicable in the instant case. The Aargus/BGK Agreement fails to incorporate or refer to the 69 West/Aargus Contract. While the language of paragraph 2 implies possible drafting errors, neither party on appeal was a party to the Aargus/BGK Agreement. Even if we were to consider the Joyce affidavit, the affidavit fails to correct the typographical errors. It only clarifies that the term "Contract" used in the Aargus/BGK Agreement means the 69 West/Aargus Contract, but 69 West and Cook assert there are additional typographical errors in the agreement. Further, these alleged errors by Aargus and BGK would not affect either of their rights, but instead would negatively affect Clarendon and Scottsdale by requiring them to defend 69 West and Cook. Since the Aargus/BGK Agreement does not contain an obligation by BGK to confer insurance coverage to 69 West and Cook, Clarendon and Scottsdale have no duty to defend 69 West and Cook as additional insureds.

Moreover, the plain language of the Aargus/BGK Agreement shows an intention by the parties not to define the insurance requirements. The Aargus/BGK Agreement contained a provision that their obligations "shall be joint and several, unless otherwise agreed herein." Within that agreement, paragraph 16 stated that "all insurance that may from time to time be required shall be obtained in such manner as the parties hereto agree." "When interpreting the provisions of a contract, the court must ascertain and give effect to the intent of the parties; and the language of the contract is the best indication of the parties' intent." <u>Liberty Mutual Fire Insurance Co.</u>, 363 Ill. App. 3d at 341. Paragraph 16 indicates the parties' intent was to leave open the subject of insurance for a future agreement. Nothing in paragraph 16 obligates BGK to procure insurance for 69 West and Cook, and therefore, they do not qualify as additional insureds

13

under BGK's policies with Clarendon and Scottsdale. Moreover, we will not insert language into the agreement that Aargus and BGK could easily have included. " 'There is a strong presumption against provisions that easily could have been included in the contract but were not.' " Miner v. Fashion Enterprises, Inc., 342 Ill. App. 3d 405, 417 (2003), quoting Wright v. Chicago Title Insurance Co., 196 Ill. App. 3d 920, 925 (1990). Since Aargus and BGK could have included language in their contract indicating BGK's undertaking of the insurance requirements in the 69 West/Aargus Contract, but declined to do so, this court will not add such language to the contract.

We also decline to consider the Joyce affidavit because the Aargus/BGK Agreement contains an integration clause. Paragraph 21 provides: "This Agreement represents the entire agreement and understanding of the parties hereto, and all prior or concurrent agreements, understanding, representations, and warranties in regard to the subject matter hereof are and have been merged herein."

" 'When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing.' " Air Safety, 185 Ill. 2d at 464, quoting Armstrong Paint & Varnish Works v. Continental Can Co., 301 Ill. 102, 106 (1921). Therefore, "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise

1-06-1864

from extrinsic evidence." Air Safety, 185 Ill. 2d at 464.

Here, the integration clause established that Aargus and BGK, as the contracting parties, intended to be bound only by the terms of the contract as written. If we were to consider the Joyce affidavit to explain the Aargus/BGK Agreement, then we would be ignoring the integration clause and its purpose. We decline to do so. The Aargus/BGK Agreement fails to demonstrate that BGK undertook an obligation to provide insurance coverage to 69 West and Cook.

Because we have reversed the order of summary judgment in favor of 69 West and Cook, we need not decide the issue of the exclusion raised by Clarendon and Scottsdale.

Based on the foregoing reasons, we reverse the grant of summary judgment in favor of 69 West and Cook and enter summary judgment for Clarendon and Scottsdale, pursuant to Supreme Court Rule 366. 155 Ill. 2d R. 366.

Reversed.

CAHILL and R. GORDON, JJ., concur.

15