# Illinois Official Reports

## Appellate Court

---

**West Bend Mutual Insurance Co. v. Athens Construction Co.,**
**2015 IL App (1st) 140006**

---

Appellate Court
Caption

WEST BEND MUTUAL INSURANCE COMPANY, Plaintiff-Appellee and Intervening Defendant-Appellee, v. ATHENS CONSTRUCTION COMPANY, INC., Defendant-Appellant (Harleysville Lake States Insurance Company, as Subrogee of Athens Construction Company, Inc., Intervening Plaintiff-Appellant; Golub LSP Investors, LLC, Northwestern Memorial Healthcare, and Factory Mutual Insurance Company, Defendants).

District & No.

First District, First Division
Docket No. 1-14-0006

Filed

March 16, 2015

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 10-CH-5830; the Hon. Peter Flynn, Judge, presiding.

Judgment

Affirmed.

Counsel on
Appeal

John J. Piegore and Edric S. Bautista, both of Sanchez Daniels & Hoffman LLP, of Chicago, for appellants.

Thomas F. Lucas and Kelly E. Purkey, both of McKenna Storer, of Chicago, for appellee.

Panel                 JUSTICE CONNORS delivered the judgment of the court, with opinion.

Presiding Justice Delort and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant Athens Construction Co., Inc. (Athens), and its insurer, intervening plaintiff Harleysville Lake States Insurance Company (Harleysville), appeal an order of the circuit court that granted summary judgment to plaintiff West Bend Mutual Insurance Company (West Bend) and against Athens and Harleysville. On appeal, Athens and Harleysville contend that the court erred in finding that the written agreement between Athens and a subcontractor did not require the subcontractor to name Athens as an additional insured on the subcontractor's commercial general liability (CGL) policy with West Bend. We affirm.

¶ 2      The record reveals that Athens had entered into a general contract with a tenant of 680 North Lake Shore Drive for a renovation and build-out and subcontracted with R. Carrozza Plumbing Company (Carrozza) for associated plumbing work. In October 2008, a plumbing incident occurred that allegedly caused damage to the building and to the property of owners of certain suites. The building's owner, Golub LSP Investors, LP (Golub), and Northwestern Memorial Healthcare (Northwestern) claimed to have been damaged by the incident and sought damages from Carrozza and Athens.

¶ 3      Subsequently, Athens tendered its defense to West Bend, Carrozza's insurer, believing that Carrozza had named Athens as an additional insured. West Bend responded that based on *United Stationers Supply Co. v. Zurich American Insurance Co.*, 386 Ill. App. 3d 88 (2008), Athens did not qualify as an additional insured under Carrozza's policy and therefore the tender should be withdrawn. West Bend also filed a complaint for a declaratory judgment, requesting that the court find and declare that West Bend was not obligated to defend or indemnify Athens in connection with the lawsuits filed by Golub and Northwestern.

¶ 4      Harleysville was allowed to intervene. Harleysville stated that as a result of West Bend's refusal, it had undertaken Athens's defense in the Golub and Northwestern suits and asserted that it sought to recover all or some of the defense and indemnity paid for Athens in those suits.

¶ 5      At this point, we note some of the key documents involved in this dispute. West Bend had issued a contractors businessowners' policy to Carrozza that included the following additional insured endorsement:

"COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **WHO IS AN INSURED (Section II)** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.

The written contract or written agreement must be:

1. Currently in effect or becoming effective during the term of this policy; and

2. Executed prior to the 'bodily injury,' 'property damage,' 'personal injury and advertising injury.' "

¶ 6        Additionally, the subcontract between Athens and Carrozza, dated October 10, 2008, included article 13.1, which provided:

> "The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:
>
> | Type of insurance | Limits of liability ($0.00) |
> |---|---|
> | The following clause should be provided on the Subcontractor's Certificate of Insurance: | $1,000,000.00"<br>(Emphasis in original.) |
> | *Athens Construction Co., Inc. Additional insured, on a primary and non-contributory basis* | |

¶ 7        Exhibit B to the subcontract was titled "Rules and Regulations for Contractors" and stated in part that, prior to beginning work, a "Certificate of Insurance (Requirements are included on a separate sheet)" must be on file with the office of the building. This "separate sheet" was not attached to the subcontract. However, the record contains a fax sent by Athens to Carrozza on September 16, 2008 that states:

> "Following please find requirements for your certificate of insurance ***. Please fax a copy of the required certificate to our office as soon as possible and mail the original."

The requirements were listed on a separate page and listed the minimum limits of liability for various types of insurance, including CGL insurance. The page also noted that the following needed to be named as additional insured:

> "1. Golub & Company LLC
> 2. Golub Needham Assoc.
> 3. Golub LSP Investors, LP
> 4. Golub Realty Servics [*sic*]."

¶ 8        The record also contains a certificate of insurance that was dated June 18, 2008, before the subcontract was executed, and listed Athens as the certificate holder and Carrozza as the insured. The certificate further stated that "Athens Construction Co. Inc. is an Additional Insured for General Liability on a Primary and Non-Contributory basis as required by written contract." The certificate included the following statement:

> "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."

¶ 9        Returning to the history of the parties' actions in the circuit court, we note that West Bend and Harleysville and Athens ultimately filed cross-motions for summary judgment. In its motion, West Bend contended that Athens did not qualify as an additional insured because the Athens-Carrozza subcontract did not fulfill the "written contract" requirement of the West Bend endorsement. According to West Bend, article 13.1 of the subcontract did not specify any insurance requirements, other than that a liability of $1 million was required. West Bend further asserted that the certificate of insurance also did not qualify Athens as an additional insured because certificates that identify the insurance policy, but contain disclaimer language,

- 3 -

confer no rights on the certificate holder and are for information purposes only. West Bend also contended that the matter was "nearly identical" to *United Stationers*, 386 Ill. App. 3d 88.

¶ 10    Attached to West Bend's motion was a deposition from Dimitrios Kourkouvis,[1] Athens's president. Kourkouvis described the contract process as beginning in June 2008 and ending "on the date of the contract." As to the June 18 certificate of insurance, Kourkouvis believed it may have been in response to either a request to provide the certificate for a specific project or a request to have a current certificate in Athens's file as part of Athens's need to have current information from subcontractors who do work on a continuing basis.

¶ 11    The record also contains an affidavit from Kourkouvis, in which he avers that he was responsible for negotiating, drafting, and executing the contract with Carrozza. Kourkouvis stated that it was Athens's corporate practice to "require subcontractors, such as Carrozza, to include Athens as an additional insured on its general liability policy." Kourkouvis further averred that the intent of article 13.1 of the subcontract was to require Carrozza to include Athens as an additional insured on Carrozza's general liability insurance policy. According to Kourkouvis, the terms "additional insured," "limits of liability," and "primary and noncontributory basis" refer only to general liability insurance. Kourkouvis stated that the certificate of insurance "serves no other purpose other than as evidence that Carrozza complied with the contract requirement to add Athens as an additional insured on Carrozza's general liability insurance."

¶ 12    In their response to West Bend's motion for summary judgment and cross-motion for summary judgment, Harleysville and Athens contended that article 13.1 of the subcontract required Carrozza to name Athens as an additional insured on its CGL policy. Harleysville and Athens further stated that article 13.1 and Exhibit B of the subcontract, along with the insurance requirements sent on September 16, required Carrozza to add Athens as an additional insured. Harleysville and Athens also asserted that in contrast to the contract in *United Stationers*, here, pursuant to the insurance requirements in the September 16 fax, the subcontract explicitly required Carrozza to procure CGL insurance.

¶ 13    The court initially denied both parties' motions for summary judgment. The court stated that if article 13.1 of the subcontract meant that the drafter wanted a certificate of insurance, but not underlying insurance, "that would not only be counter intuitive, it would call for a fraud." The court stated that based on the record, there were a series of unanswered questions that a further developed record may better resolve.

¶ 14    Harleysville and Athens subsequently filed a new motion for summary judgment, asserting that they were offering evidence that was not presented in their prior motion–specifically, the prime contract and general conditions, which Harleysville and Athens contended were part of the subcontract. Harleysville and Athens maintained that, read together, the prime contract, general conditions, and subcontract satisfied West Bend's requirements to trigger additional insured coverage for Athens. After recalling article 13.1 of the subcontract, Harleysville and Athens pointed to the insurance requirements in article 11.1.1 of the general conditions, which required Athens to purchase insurance for claims " 'which may arise out of or result from [Athens's] operations *** whether such operations be by [Athens] or by a Subcontractor." Harleysville and Athens further asserted that the general conditions required insurance that would cover liability for property damage which may arise out of the operations of Athens or

---

[1]Dimitrios Kourkouvis is also spelled Dimitrios Kourkovis in the record.

one of its subcontractors. Finally, Harleysville and Athens noted the subcontract's " 'flow down' " provision, through which Carrozza assumed all of the obligations that Athens assumed toward the owner, including the obligation to purchase liability insurance. As a separate and alternative argument, Harleysville and Athens maintained that an obligation for Carrozza to procure general liability insurance was found in the insurance requirements attached to the September 16 fax.

¶ 15　　In its renewed motion for summary judgment, West Bend contended that the prime contract provisions cited by Athens did not include a requirement that a subcontractor obtain insurance coverage to protect Athens. West Bend additionally asserted that, as in *United Stationers*, the subcontract did not specifically require that Athens be named as an additional insured under a CGL policy, and moreover, the certificate of insurance referenced in article 13.1 was silent on the types of insurance required.

¶ 16　　On October 28, 2013, the court granted summary judgment in favor of West Bend and against Harleysville and Athens, adding that "[t]his order concludes this case in its entirety." In its ruling, the court stated that it believed *United Stationers* required it to rule for West Bend but that *United Stationers* was wrong. The court further stated that "[t]here may be some value to a set of rules applicable in the CGL context which boil down to it doesn't matter whether you think you were insured unless you specifically say so in the right way," and that this was a set of rules that *United Stationers* enforced. The court also stated that those rules "inevitably will result in cases in which the result does not comport with the reasonable understanding of the parties." On December 9, 2013, the court denied Harleysville and Athens's postjudgment motion and this appeal followed.

¶ 17　　On appeal, Harleysville and Athens contend that the Athens-Carrozza subcontract satisfied the requirements of the West Bend policy to trigger additional insured coverage for Athens. Harleysville and Athens first assert that the Athens-Carrozza subcontract contained a written requirement for Carrozza to procure CGL insurance. Harleysville and Athens next contend that the Athens-Carrozza subcontract also contained a written requirement for Carrozza to add Athens as an additional insured on Carrozza's CGL policy with West Bend.

¶ 18　　The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court that are appropriate subjects for disposition by summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). When parties file cross-motions for summary judgment, the court is invited to decide the issue on summary judgment as a matter of law, but summary judgment is nonetheless inappropriate if there exist factual questions about a material issue. *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005). We review *de novo* an order granting summary judgment. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010).

¶ 19　　We first address Harleysville and Athens's contention that the Athens-Carrozza subcontract contains a written requirement for Carrozza to procure CGL insurance. Harleysville and Athens assert that the general conditions, which were part of the subcontract, specified Athens's obligation to the owner to procure CGL insurance. Harleysville and Athens further assert that pursuant to the subcontract, Carrozza assumed toward Athens all obligations

that Athens assumed toward the owner, which included the obligation to procure CGL insurance.

¶ 20    The general conditions document was part of the contract between Athens and the owner of the 680 North Lake Shore Drive project and was titled "AIA Document 201–1997: General Conditions of the Contract for Construction." Article 11.1.1 of the general conditions stated:

> "The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:
>
> > [1.] claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;
> >
> > [2.] claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;
> >
> > [3.] claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;
> >
> > [4.] claims for damages insured by the usual personal liability coverage;
> >
> > [5.] claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;
> >
> > [6.] claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;
> >
> > [7.] claims for bodily injury or property damage arising out of completed operations ***."

Because this list includes claims for bodily injury and property damage, we agree that the general conditions required Athens to purchase CGL insurance.

¶ 21    The next step is to determine whether the obligation to purchase CGL insurance transferred to Carrozza based on the general conditions and the Athens-Carrozza subcontract. Article 1.1 of the subcontract stated that the subcontract consisted of the following documents: the subcontract itself, modifications issued after the agreement between the owner and contractor was executed, modifications to the subcontract made after the subcontract was executed, and the prime contract, [2] which consisted of the agreement between the owner and contractor and "other Contract Documents enumerated therein." Article 1.2 of the subcontract stated that except to the extent of a conflict with a specific term or condition in the subcontract documents, "the General Conditions governing this Subcontract shall be the edition of the AIA Document 201, General Conditions of the Contract for Construction, current as of the date of this Agreement."

¶ 22    The subcontract also contained article 2.1, the specific flow-down provision relied on by Harleysville and Athens. Article 2.1 stated:

> "The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document 201

---

[2]The prime contract was not included in the record.

current as of the date of this Agreement apply to this Agreement pursuant to Section 1.2 and the provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations that the Owner *** assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor *** assumes toward the Owner ***. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner *** has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor *** has against the Owner, insofar as applicable to this Subcontract."

¶ 23    Harleysville and Athens contend that this provision transferred Athens's obligation to procure CGL insurance to Carrozza, which assumed "all obligations and responsibilities" which Athens assumed toward the owner. As a preliminary matter, we agree that the general conditions were part of the subcontract. One instrument may incorporate another instrument by reference. *Turner Construction Co. v. Midwest Curtainwalls, Inc.*, 187 Ill. App. 3d 417, 421 (1989). Further, a subcontract may incorporate provisions of a general contract. *State Farm Mutual Automobile Insurance Co. v. George Hyman Construction Co.*, 306 Ill. App. 3d 874, 882 (1999). To incorporate another document, the reference must show an intention to incorporate the document and make it part of the contract. *Clarendon America Insurance Co. v. 69 West Washington Management, LLC*, 374 Ill. App. 3d 580, 587 (2007). Here, the subcontract showed an intention to incorporate the general conditions document. Article 1.2 of the subcontract explicitly stated that the general conditions governing the subcontract consisted of the general conditions document that was part of the contract between Athens and the owner. We do not see any conflict that would prevent the general conditions from applying to the subcontract.

¶ 24    Moreover, we agree that through the general conditions and the cited provisions of the subcontract, Carrozza was obligated to purchase CGL insurance. Article 2.1 of the subcontract stated that the general conditions applied to the subcontract and that the Subcontractor assumed "all obligations and responsibilities" that the contractor assumed toward the owner, which included purchasing the required insurance policies. See *Turner Construction Co.*, 187 Ill. App. 3d at 421 (parties intended subcontract to incorporate general contract's provisions for "rights and remedies," including the right and obligation to arbitrate disputes). As such, Carrozza assumed the responsibility to procure CGL insurance, just as Athens promised the owner that it would procure CGL insurance.

¶ 25    Because we have found that Carrozza was obligated to purchase CGL insurance through the general conditions and article 2.1 of the subcontract, we will not address Harleysville and Athens's alternative argument that the September 16 fax required Carrozza to procure CGL insurance.

¶ 26    That Carrozza was obligated to purchase CGL insurance for itself does not answer the question of whether Carrozza was also required to name Athens as an additional insured on that policy. Carrozza's insurance policy with West Bend provided that an additional insured was "any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement." Harleysville and Athens contend that West Bend's requirement was fulfilled by reading together the requirement that Carrozza purchase CGL insurance with article 13.1 of the subcontract, which stated:

"The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

| Type of insurance | Limits of liability ($0.00) |
|---|---|
| The following clause should be provided on the Subcontractor's Certificate of Insurance: | $1,000,000.00" |
| | (Emphasis in original.) |
| *Athens Construction Co., Inc. Additional insured, on a primary and non-contributory basis* | |

Harleysville and Athens additionally argue that the certificate of insurance is evidence of the parties' intent to name Athens as an additional insured. The certificate stated that Athens was "an Additional Insured for General Liability on a Primary and Non-Contributory basis as required by written contract." Article 13.3 of the subcontract required certificates of insurance to be filed with the contractor before the subcontractor began work.

¶ 27    The same rules apply to the construction of an insurance policy that are applied to the construction of other types of contracts. *Mt. Hawley Insurance Co. v. Robinette Demolition, Inc.*, 2013 IL App (1st) 112847, ¶ 15. A court's primary objective is to ascertain and give effect to the parties' intentions as expressed in the policy's language. *Id*. If the language is unambiguous, a provision will be applied as written, unless it contravenes public policy. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning. *Clarendon America Insurance Co.*, 374 Ill. App. 3d at 585. However, a contract is not ambiguous if the court can ascertain its meaning from the general contract language. *Id*.

¶ 28    We find that the subcontract did not require Carrozza to name Athens as an additional insured on Carrozza's CGL policy. The plain meaning of article 13.1 is that Carrozza was required to state that Athens was an additional insured on a certificate of insurance. However, the certificate contained a disclaimer that it conferred no rights on Athens, the certificate holder, and did not alter coverage. Where the certificate refers to the policy and expressly disclaims any coverage other than that contained in the policy itself, the policy governs the extent and terms of the coverage. *United Stationers*, 386 Ill. App. 3d at 102. Additionally, because we find the subcontract to be unambiguous, we decline to consider Kourkouvis's affidavits and testimony about the meaning of article 13.1 and the intentions for that part of the subcontract. See *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999) (if the language of the contract is facially unambiguous, then the contract is interpreted without the use of parol evidence). We also find that the certificate of insurance does not serve as evidence of the parties' intent to name Athens as an additional insured, given that the actual, plain language of the subcontract does not contain such a requirement. See *Clarendon America Insurance Co. v. Aargus Security Systems, Inc.*, 374 Ill. App. 3d 591, 597 (2007) (rejecting the argument that certificates served as confirmation that one party agreed to provide coverage for the other, noting that the plain language of the contract did not require the party to be added as an additional insured and stating that the existence of certificates did not change the fact that the contract did not discuss insurance requirements).

¶ 29    Moreover, although Carrozza was obligated to obtain CGL insurance, this obligation was not connected to Athens. Carrozza was only obligated to obtain insurance for itself. Nowhere

in the subcontract was Carrozza required to name Athens as an additional insured. The general conditions document, which is the origin of Carrozza's obligation to obtain CGL insurance, did not require Athens to name the owner as an additional insured. As such, Carrozza could not have assumed an obligation to name Athens as an additional insured in the subcontract. Further, a court cannot alter, change, or modify existing terms of a contract, or add new terms or conditions to which the parties do not appear to have assented. *Thompson v. Gordon*, 241 Ill. 2d 428, 449 (2011). Additionally, there is a presumption against provisions that easily could have been included in a contract but were not. *Id*. Athens could have required Carrozza to add it as an additional insured, but did not.

¶ 30    The parties devote much of their briefs to discussing the impact of *United Stationers*, 386 Ill. App. 3d 88, on the instant matter. We find that *United Stationers* is only partially applicable to this case. There, United Stationers and D.C. Taylor entered into a construction contract that required D.C. Taylor to present to United Stationers "a Certificate of Insurance demonstrating full compliance" with various insurance requirements. (Internal quotation marks omitted.) *United Stationers*, 386 Ill. App. 3d at 90. The contract also required D.C. Taylor to name United Stationers on certificates of insurance as an additional insured on a primary and noncontributory basis, but did not specify any type of insurance to which United Stationers was required to be named as an additional insured. *Id.* at 91. Additionally, D.C. Taylor was required to purchase workmen's compensation and employer's liability insurance, contractual liability insurance, automobile liability insurance, and a hazardous materials policy endorsement. *Id*. The policies on the certificate included a CGL policy, automobile liability policy, excess liability policy, and a contractors/pollution liability policy. *Id.* at 94. The certificate also stated that it was "issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." (Internal quotation marks omitted.) *Id.* Meanwhile, D.C. Taylor's policy with Zurich, its insurer, included CGL insurance and contained an additional insured provision that included "any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement." (Internal quotation marks omitted.) *Id.* at 92.

¶ 31    Ultimately, the court found that United Stationers was not an additional insured under the Zurich CGL policy for four reasons: (1) United Stationers was not specifically listed as an additional insured in the policy; (2) the contract that required D.C. Taylor to purchase insurance on behalf of United Stationers did not specifically require the purchase of a CGL policy; (3) there was no evidence of intent by the parties that United Stationers was to be added as an additional insured; and (4) the disclaimer language in the certificate of insurance put United Stationers on notice that the CGL policy language governed coverage of additional insureds. *Id.* at 105. The court found that while the construction contract provided a list of the types of insurance in which United Stationers was required to be named as an additional insured, CGL insurance was not on that list. *Id.* at 104.

¶ 32    Both parties assert that *United Stationers* supports their position. Harleysville and Athens contend that the Athens-Carrozza subcontract fulfilled the requirements of *United Stationers* because here, the subcontract's requirement for a certificate of insurance naming Athens as an additional insured applied to the policies listed in the general conditions, which included CGL insurance. Meanwhile, West Bend asserts in part that the plain language of the subcontract did not require Carrozza to purchase CGL insurance and there was no provision in the prime

contract that required a subcontractor to purchase a CGL policy to protect Athens. West Bend also argues that like *United Stationers*, here Athens was not named in the West Bend policy, the Athens-Carrozza subcontract did not require the purchase of a CGL policy, there was no evidence of an oral agreement between Athens and Carrozza to name Athens as an additional insured on the West Bend policy, West Bend consistently denied that Athens was an additional insured, and the certificates of insurance contained disclaimer language that notified Athens that the policy and not the certificate governed the extent and terms of the coverage.

¶ 33   *United Stationers* does not perfectly align with the circumstances of this case. In *United Stationers*, a key factor was that the list of insurance policies in the United Stationers-D.C. Taylor contract that required D.C. Taylor to name United Stationers as an additional insured did not include CGL insurance. *Id.* Here, as stated above, the general conditions and subcontract required Carrozza to purchase CGL insurance, but only for itself. We do not read the general conditions–the document that mentions CGL insurance–to require the contractor to name anyone other than itself as an insured. The general conditions required purchase of insurance "as will protect the Contractor from claims set forth below." When Carrozza became bound to the general conditions in the subcontract, it was agreeing to purchase CGL insurance to cover itself. See *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 342 (2005) (policy language supported interpretation that insurance provision required party to secure insurance to cover its own negligence and moreover, there was no language that obligated one party to add the other as an additional insured on the CGL policy). Thus, the problem for Athens was not that CGL insurance was not listed in the required types of insurance. Rather, the problem was that Carrozza never assumed the obligation to name Athens as an additional insured. As noted above, the certificate of insurance does not help Athens in this regard. Like the nearly identical certificate of insurance clause in *United Stationers*, article 13.1 does not specify CGL insurance or any other kind of insurance. See *United Stationers*, 386 Ill. App. 3d at 91.

¶ 34   Lastly, we are not persuaded by Harleysville and Athens's reliance on *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75 (2002). There, a significant reason for finding that one party was an additional insured was that the insurance company initially confirmed that the party was an additional insured in a letter and several memoranda. *West American Insurance Co.*, 334 Ill. App. 3d at 81. Here, in contrast, West Bend has consistently denied that Athens was an additional insured.

¶ 35   For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 36   Affirmed.