2019 IL App (2d) 190341-U
No. 2-19-0341
Order filed December 13, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JLG INDUSTRIES, INC., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-MR-36 |
| | ) | |
| TOKIO MARINE SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellant, | ) | Honorable |
| | ) | Bonnie M. Wheaton |
| (Illini Hi-Reach, Inc., Defendant). | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court erred when it determined that plaintiff's interpretation of the rental agreement was unambiguously correct such that it was entitled to summary judgment. The rental agreement *is* ambiguous as to whether defendant was required to name plaintiff as an additional insured on its commercial general liability policy covering third-party claims for property damage and bodily injury, thus precluding summary judgment. We vacate the grant of summary judgment to plaintiff, affirm the denial of summary judgment to defendant, and remand for the consideration of extrinsic evidence.

¶ 2   Plaintiff-appellee, JLG Industries (JLG), moved for a declaratory judgment against

defendant-appellant Tokio Marine Specialty Insurance Company (Tokio) and defendant Illini Hi-

Reach (Illini). JLG sought for Tokio to defend it in an underlying wrongful death action (the underlying Wilda suit). It argued that Illini had named JLG as an additional insured on its Tokio commercial general liability policy covering third-party claims for property damage and bodily injury (third-party coverage). The policy stated that additional insureds included those required by written contract to be additional insureds. According to JLG, its rental agreement with Illini constituted such a written contract, and that rental agreement required Illini to name JLG as an additional insured for third-party coverage.

¶ 3    JLG and Tokio-Illini filed cross-motions for summary judgment. JLG's coverage as an additional insured turned on the language in JLG and Illini's rental agreement. The trial court granted judgment to JLG, ordering Tokio to defend JLG in the underlying Wilda suit. The court relied on *Thompson v. Gordon*, 241 Ill. 2d 428 (2011), for the proposition that, when a contract contains designated subparts, and each subpart uses different terminology than the other, the parties intended that each subpart contain different requirements. The court determined that, in contrast to *Thompson*, the agreement here did *not* contain different subparts. Therefore, the agreement's reference to additional insureds, which Tokio and Illini believed to have been made in a subpart pertaining exclusively to first-party coverage for physical damage to the rented equipment, also applied to third-party coverage for property damage and bodily injury. Tokio appeals. (Illini does not join in the appeal.)

¶ 4    We determine that the rental agreement is ambiguous. A fair argument can be made that the agreement contains subparts. The agreement contains what appear to be headings followed by colons. However, these purported subparts are not, as the trial court found, as clearly delineated as in *Thompson*. Also, it is not clear where the second alleged subpart terminates. In addition to the indefinite break in subparts, other points of reasonable dispute prevent us from determining

that either party is unambiguously correct, such that it should be entitled to summary judgment. Therefore, we vacate the grant of summary judgment to JLG, affirm the denial of summary judgment to Tokio, and remand for the consideration of extrinsic evidence. Should the issue arise on remand, we also briefly address, and reject, Tokio's alternative argument that it was not required to defend JLG in the underlying Wilda suit for the additional reason that the Wilda suit does not arise out of Illini's "work" as required by the insurance policy. Summary judgment to JLG vacated, denial of summary judgment to Tokio affirmed, and cause remanded for the consideration of extrinsic evidence.

¶ 5                                    I. BACKGROUND

¶ 6      We first introduce the parties. JLG designs and manufactures boom lifts. JLG, doing business as ServicePlus[1] rented its lift to Illini. Illini has a commercial general liability insurance

---

[1] For the purposes of this case, JLG is ServicePlus. When arguing its motion for summary judgment, Tokio read aloud parts of the rental agreement to the trial court. It argued: "[The agreement] specifically states that all customers, which includes Illini, must provide to ServicePlus, *which is JLG*, a certificate of insurance…" (Emphasis added.) Additionally, JLG alleged in its complaint that it was an affiliate of ServicePlus, and Tokio did not deny this in its answer. Although the parties do not discuss it, elsewhere in the rental agreement, the agreement refers to ServicePlus *and* its subsidiaries, parent companies, and affiliates. In any case, Tokio concedes in its appellate brief that it has *forfeited* the question of whether the rental agreement's reference to ServicePlus is sufficient to create an ambiguity as to whether ServicePlus is JLG. See *In re Estate of Funk*, 221 Ill. 2d 30, 96-97 (2006). The parties presented the rental agreement for interpretation on summary judgment with Tokio conceding that JLG and ServicePlus were

policy with Tokio, which covers third-party claims for property damage and bodily injury.

¶ 7    Separately, after JLG rented the lift to Illini, Illini rented the lift to a company called Area Erector's, Inc.  Area Erector's employee, Patrick C. Wilda, was fatally injured by the lift.  Wilda's estate sued JLG for wrongful death based on, *inter alia*, failure to properly train those who would be using the lift (the underlying Wilda suit).

¶ 8    JLG sought a declaration that Tokio had a duty to defend JLG in the underlying Wilda suit, based on JLG's alleged status as an additional insured on Illini's insurance policy with Tokio.[2]

¶ 9    Thus, although many parties play ancillary roles in the background of this case, for our purposes, the three key players are JLG (the *alleged* additional insured), Tokio (the insurance company), and Illini (the company who rented the lift *from* JLG and *to* Area Erector's and who *allegedly* was required to have named JLG as an additional insured per the terms of the JLG-Illini rental agreement.)  Only JLG and Tokio are parties to the instant appeal, and the central question is whether the JLG-Illini rental agreement required Illini to name JLG as an additional insured on

---

interchangeable for the purposes of determining Illini's duty to name JLG as an additional insured on one or more policies.  The interest of justice does not require us to overlook the forfeiture.  See *Id*.  Tokio does not explain the corporate relationship between JLG and ServicePlus.  And, even if we were to overlook the forfeiture and agree with Tokio that JLG is not a stand-in for ServicePlus, it would only support our ruling that the rental agreement is ambiguous.

[2] JLG also sought a declaration against Philadelphia Insurance Companies, but the action against Philadelphia was later dismissed by stipulation of the parties.  The parties to the instant appeal do not explain Philadelphia's relationship to the other parties in this case.  They appear to concede that Philadelphia is not relevant to the case.  We accept this implicit concession.

its policy with third-party coverage.

¶ 10        A. Illini's Insurance Policy with Tokio: The Additional Insured Endorsement

¶ 11    Illini had procured commercial general liability insurance for itself with Tokio. Both parties agree that the policy covers third-party claims for damage to property or bodily injury.

¶ 12    The policy contained an additional insured endorsement. The additional insured endorsement stated:

"Name of Person or Organization (Additional Insured):

As required by written contract

* * *

SECTION II-WHO IS AN INSURED is amended to include as an additional insured the person(s) or organization(s) shown in the endorsement schedule, but only with respect to liability for 'bodily injury,' 'property damage,' or 'personal and advertising injury' arising out of or relating to your negligence in the performance of 'your work' for such person(s) or organization(s) ***."

¶ 13    The policy defined "your work" as:

"22. 'Your Work'

    a. Means:

        1. Work or operations performed by you or on your behalf; and

        2. Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work,' and

2. The providing of or failure to provide warnings or instructions."

¶ 14    In other words, the additional insured endorsement provides coverage to organizations that Illini was *required by written contract* to name as an additional insured, but only with respect to covered injuries arising out of Illini's negligence in the performance of "your [Illini's] work." Here, the written contract at issue is the JLG-Illini rental agreement.

¶ 15                        B. The JLG-Illini Rental Agreement

¶ 16    We now discuss the rental agreement between JLG and Illini.  Both parties agree that the rental agreement's tight layout and lack of visual break contributed to their dispute in interpreting the agreement.  The rental agreement's insurance provision provided in total:

> "Customer Insurance Obligation.  *Physical Damage To Equipment*: All Customers must provide to [JLG][3], at the time [the] Equipment is rented, a certificate of insurance naming [JLG] as a loss payee and/or additional insured on said certificate [*sic*] evidence [*sic*] coverage for physical damage to the Equipment.  Such physical damage insurance covering the Equipment may [*sic*] be canceled or materially modified except upon twenty (20) days prior written notice to [JLG] at the branch office identified in this Agreement. *Bodily Injury/Property Damage; Responsibility to Third Parties*: In addition to the foregoing physical damage insurance for the Equipment, Customer will, at Customer's expense, at all times during the term of this Agreement, maintain in force a commercial general liability insurance policy covering bodily injury/property damage liability on the Equipment in an amount not less than one million dollars ($1,000,000) combined single limit.  Such third party liability coverage shall be primary, and not excess or on a

_____

[3] As discussed in n.1, the rental agreement actually named JLG's affiliate, ServicePlus.

contributory basis, and shall provide coverage for liability for injuries and/or damages sustained by any person or person agents, sublessees or employees of Customer, and Customer's indemnity obligations herein. Customer agrees to abide by all terms and conditions of said insurance. In the event of a loss, Customers, its agents and employees will cooperate fully with [JLG] and Customer's insurer in the investigation, prosecution and/or defense of any claim or suit arising therefrom and will do nothing to impair or invalidate the applicable [*sic*] insurance coverage. [JLG] does not waive any claims or rights hereunder. The aforesaid Customer insurance obligation in no way limits Customer's ultimate liability hereunder. [JLG] does not provide, extend, or afford any insurance coverage to Customer, and Authorized Operators of the Equipment or any other person under this Agreement. *Power of Attorney*: Customer hereby grants and appoints to [JLG] a Limited Power of Attorney to present insurance claims for property damage to Customer's insurance carrier if the equipment is damaged during the term of this Agreement and to endorse Customer's name on insurance payments for charges or damages." (Emphases added.)

¶ 17 Outside of the above insurance provision, the rental agreement also required Illini to ensure that all authorized operators of the lift were properly trained and qualified. It stated: "Customer [Illini] represents and warrants to [JLG] that any person operating the equipment has been fully trained and qualified in the proper and safe use thereof."

¶ 18 Additionally, the rental agreement provided for the ultimate purchase of the equipment, should Illini choose to do so.

¶ 19 Separate from the rental agreement, JLG and Illini also entered into a Distributor Sales and Service Agreement, in which Illini agreed to "instruct the appropriate personnel of each customer

*** as to the proper and safe handling, operation, maintenance[,] and use of such product ***."

¶ 20                                  C. The Underlying Wilda Suit

¶ 21    After JLG rented its lift equipment to Illini, Illini then rented it to Area Erector's.  Area Erector's used the lift equipment to perform certain construction work on a site located near Lorenzo Road and I-55 in Wilmington.  Area Erector's employee, Wilda, was then fatally injured by the lift equipment while working on the site.

¶ 22    Wilda's estate sued JLG based on claims of strict products liability and negligence under the Illinois Survival and Wrongful Death Acts.  The estate's third amended complaint alleged that JLG failed to design a lift with an adequate safety system to prevent unsafe operation and that JLG failed to adequately train (users) to prevent user harm.

¶ 23                            D. Filings Related to the Instant Suit

¶ 24    JLG filed a third-party complaint against Illini.  JLG's theory of the case was that it had no control over the lift at the time of the accident; Illini did.  Illini was the only company in the position to train Area Erector's prior to renting the lift to them.  Illini failed to properly inspect or service the lift.  Also, Illini failed to ensure that Wilda was properly trained, and it failed to equip the lift with an accessory that would have prevented the accident.

¶ 25    Additionally, JLG tendered its defense and demanded that Tokio defend and indemnify it in the underlying Wilda suit pursuant to the terms of the JLG-Illini rental agreement, which was in effect at the time of Wilda's fatal injury.  JLG argued that the rental agreement required Illini to name JLG as an additional insured on Illini's commercial general liability policy covering third-party claims for property damage or bodily injury.  Tokio did not respond.

¶ 26    Thus, in January 2018, JLG commenced the instant action against Tokio and Illini, seeking a declaration of Tokio's obligation to defend and indemnify JLG as an additional insured under

the Illini-Tokio insurance policy with respect to the Wilda suit. JLG also sought attorney fees against Tokio pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)).

¶ 27    The parties filed cross motions for summary judgment, which the court heard in January 2019. The court determined that Tokio had a duty to defend JLG as an additional insured under the policy, which referenced the rental agreement. The court rejected Tokio's argument that the rental agreement contained separate and distinct obligations as to first-party coverage for physical damage to the rented equipment and third-party commercial general liability for damage to property and bodily harm. The court explained:

"In this case, two separate provisions are contained in the same paragraph. One provision follows the other. I believe the case law is quite clear that the provisions have to be read as a whole since they are in the same paragraph. If they were separated in two separate subparts or if they were on different pages, that would be a different story. But I think the court is required to read the entire paragraph as a whole.

At the very least, I think it constitutes an ambiguity which must be resolved in favor of the insured. I believe that when read as a whole, the reasonable interpretation is that Illini must obtain commercial general liability coverage in addition to the foregoing sentence which would necessarily include naming JLG as an additional insured."

¶ 28    The court determined that, while Tokio had a duty to defend JLG, the question of indemnity was premature.

¶ 29    The court denied attorney fees, stating: "[T]here's certainly obviously reasonable interpretations that can be made for both. So, I believe the 155 sanctions [awarding attorney fees] are not appropriate in this case."

¶ 30    Tokio's attorney then asked the court for clarification:

> "[TOKIO]: The comment that Your Honor made about an ambiguity, finding an ambiguity, is that with respect to the [JLG-Illini rental agreement] or is that with respect to the [insurance] policy[?]
>
> * * *
>
> So just for clarification['s] sake, Your Honor, the [rental agreement] is actually a JLG document and any ambiguity, therefore, should be construed against JLG.
>
> THE COURT: True.  That's true.
>
> [JLG]: But the ruling I don't believe was based on any extrinsic evidence and that would be the next step in construing the contract, Your Honor.
>
> * * *
>
> [TOKIO]: I guess just for clarity, is the court ruling that the [rental agreement] was ambiguous; that the provision in the [rental agreement] is ambiguous?
>
> THE COURT: No.  I said at the very least it could be considered an ambiguity; but when you read everything together, the reasonable interpretation is that there was—that it included a duty—or, rather, yeah, the duty of Illini to purchase coverage when reading them together.
>
> [JLG]: As under *Thompson v. Gordon*.
>
> THE COURT: Yeah.  Okay."

¶ 31    Tokio moved to reconsider on the merits and to seek further clarity on the court's statements regarding the ambiguity.  On the merits, Tokio argued that the court's obligation to read the contract as a whole did not mean that it could not recognize that there were two separate sections within the rental agreement's insurance provision.  It believed that *Thompson* supported

its decision, rather than disproved it. Tokio urged that, at the very least, the agreement was ambiguous and should be resolved against JLG. JLG disagreed that the agreement was ambiguous. It contended, however, that if the agreement was ambiguous, the next step would be to deny summary judgment and proceed to hear extrinsic evidence bearing on the parties' intent. Tokio again urged that any ambiguity be resolved against JLG as the drafter, but it appeared to concede that an evidentiary hearing would be an acceptable step: "[A]t the very least, if there is an ambiguity, it should be—summary judgment should have been denied."

¶ 32     The trial court denied the motion to reconsider, stating: "[W]ell, first of all, I apologize for being so inarticulate the last time that you were here. But I do believe that the entire paragraph when read as a whole, as the court must read it, is not ambiguous and it does create an obligation for [Illini to purchase commercial general liability insurance covering third-party claims] for JLG. I've considered it, I've reconsidered it. I think the original ruling was correct." This appeal followed.

¶ 33                                    II. ANALYSIS

¶ 34     Tokio appeals the trial court's grant of summary judgment to JLG. Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits on file fail to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2018); *Thompson*, 241 Ill. 2d at 438. The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. *Id*. Summary judgment should be granted only when the right of the moving party is clear and free from doubt. *Id*. The construction of an insurance policy or contract and a determination of the rights and obligations thereunder involve questions of law appropriate for disposition by summary judgment. *United Stationers Supply Co. v. Zurich American Insurance Co.*, 386 Ill. App. 3d 88, 99 (2008). When

parties file cross-motions for summary judgment, they invite the court to decide the summary judgment as a matter of law, but that invitation does not obligate the court to render a summary judgment in either party's favor. *West Bend Mutual Insurance Co. v. Athens Construction Co., Inc.*, 2015 IL App (1st) 140006, ¶ 18. We review a trial court's grant of summary judgment *de novo*. *Id*.

¶ 35    Specifically, Tokio argues that: (1) the court misinterpreted the rental agreement to require Illini to name JLG as an additional insured on its commercial general liability policy providing coverage for third-party claims of property damage and bodily injury; and, (2) even if the rental agreement did require Illini to name JLG as an additional insured on such a policy, the claims against JLG in the underlying Wilda suit would fall outside the scope of coverage under the policy.

¶ 36                                A. Contract Interpretation

¶ 37    Tokio first argues that the court misinterpreted the rental agreement to require Illini to name JLG as an additional insured on its commercial general liability policy covering third-party claims for damage to property and bodily injury. When interpreting a contract, the court seeks to give effect to the parties' intent. *Thompson*, 241 Ill. 2d at 441. To determine intent, the court first looks to the language of the contract alone. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). The language of the contract, given its plain and ordinary meaning, is the best indicator of the parties' intent. *Id*. The court must look at the contract as a whole, because words derive meaning from the context in which they are used. *Id*. When the parties agree to the language in a contract, it is presumed that they chose their words deliberately. *Thompson*, 241 Ill. 2d at 442. As such, the court should give the chosen language its effect and should not interpret the contract in a manner that would nullify or render a provision meaningless. *Id*.

¶ 38    If the court can ascertain the parties' intent from the contract's language alone, then it is not ambiguous. *William Blair & Co., LLC, v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005). A contract is not ambiguous merely because the parties disagree on its meaning. *Thompson*, 241 Ill. 2d at 443. Rather, a contract is ambiguous if it can reasonably be interpreted as having more than one meaning, or its language is indefinite in expression. *Athens*, 2015 IL App (1st) 140006, ¶ 27. If a contract is ambiguous, then its meaning must be ascertained through the consideration of extrinsic evidence, and summary judgment is generally not appropriate. *Gallagher*, 226 Ill. 2d at 237. Whether a contract is ambiguous is a question of law to be reviewed *de novo*. *Installco Inc. v. Whiting Corp.*, 336 Ill. App. 3d 776, 783 (2002).

¶ 39    The trial court wavered considerably as to whether the rental agreement's insurance provision was ambiguous, before ultimately determining that JLG's interpretation was unambiguously correct. In fact, the trial court denied sanctions for attorney fees on the ground that each side presented a reasonable interpretation. (Despite its final position on the question of ambiguity, the trial court did not order fees, and that issue is not raised on appeal.) For the reasons that follow, we cannot agree that JLG's interpretation was *unambiguously* correct. At the same time, neither can Tokio convince us that its interpretation is unambiguously correct. Therefore, neither party was entitled to summary judgement.

¶ 40                              1. Agreed Terminology

¶ 41    We first discuss certain terminology in the rental agreement upon which the parties agree. The parties agree that there must be first-party coverage for physical damage to the rented equipment, for Illini with JLG being either a loss payee and/or an additional insured. First-party insurance covers the insured for damage to the insured's own property. There must also be third-party coverage, for Illini at a minimum, for damage to property owned by others and bodily injury

to others through a commercial general liability insurance policy. (Of course, the parties dispute whether JLG is to be named an additional insured on said policy.) Third-party insurance covers the insured's liability to others.

¶ 42    Also, a loss payee is a person or entity named in an insurance policy to be paid if the insured suffers a loss. Black's Law Dictionary 1031 (9th ed. 2009). A loss payable clause in an insurance policy authorizes payment to someone other than the named insured, especially someone with a security interest in the property; however, that payee is not treated as an additional insured. *Id.* A loss payee receives funds in the event of a loss, but, unlike an additional insured, cannot recover directly from an insurer. *Spirit of Excellence v. Intercargo Insurance Co.*, 334 Ill. App. 3d 136, 148 n.2 (2002).

¶ 43                            2. Tokio's Interpretation

¶ 44    We now set forth an overview of each party's respective interpretation and supporting argument. Tokio's interpretation is as follows. The rental agreement requires Illini to name JLG on its certificate of insurance[4] as a loss payee and/or additional insured for *first-party* coverage for physical damage to the rented equipment. Whether JLG is designated as a loss payee or an additional insured, the rental agreement's "Power of Attorney" clause allows JLG to present claims of physical damage to the rented equipment directly to Tokio. However, Illini is not required to name JLG (or anyone else) as an additional insured for *third-party* coverage for damage to property owned by others and bodily injury to others on a commercial general liability policy. Rather, Illini was required to name *itself* as the sole named insured on a commercial general liability insurance

---

[4] The distinction between a certificate of insurance and the insurance policy itself will become relevant later in the analysis.

policy for third-party coverage for damage to property owned by others and bodily injury to others. Because Illini was not required to name JLG as an additional insured on its policy providing coverage for third-party claims of property damage or bodily injury, Tokio is not required to defend JLG against such claims.

¶ 45    In support of its interpretation, Tokio relies on *Thompson* to raise a "separate subparts" argument. Tokio contends that the rental agreement contains separate subparts, the first addressing "Physical Damage to Equipment" and the second addressing "Bodily Injury/Property Damage; Responsibility to Third Parties." Each subpart is introduced with a heading. The titular words in the heading are capitalized. The heading is followed by a colon, which introduces the requirements of the subpart. The first subpart is separated from the second subpart with a period. In Tokio's view, it does not matter that each subpart is not introduced with a heading letter such as "A" or "B," or that there is not a space between subparts. Because the agreement contains separate subparts, it is clear that each subpart contains different requirements that must be honored.

¶ 46    In further support of its interpretation, Tokio cites to *Zurich*, 386 Ill. App. 3d at 104, and *Athens*, 2015 IL App (1st) 140006, ¶ 30. Tokio cites to *Zurich* for the proposition that it is perfectly acceptable for a contract to require a given party to be named an additional insured on one type of insurance, such as employer's liability insurance, but not another type of insurance, such as commercial liability insurance. Here, Tokio's argument is that the contract required Illini to name JLG as an additional insured (and/or a loss payee) on a first-party policy, but not on a third-party commercial general liability policy.

¶ 47    Tokio cites to *Athens*, 2015 IL App (1st) 140006, ¶ 30, for the proposition that it is also perfectly acceptable for a contract to require one party to a contract to purchase third-party commercial general liability insurance for itself, but not name the other party as an additional

insured on that policy. Here, Tokio's argument is that the contract required Illini to obtain third-party commercial liability insurance for itself, but not to name JLG as an additional insured on that policy. Illini did obtain third-party coverage for itself with Tokio.

¶ 48    Tokio also cites to both *Zurich* and *Athens* for the proposition that a certificate of insurance, which is what the instant rental agreement requires, and the insurance policy itself, are not the same. Being named as an additional insured on the policy itself is a surer guarantee of coverage. See *Athens*, 2015 IL App (1st) 140006, ¶ 28.

¶ 49                                C. JLG's Interpretation

¶ 50    JLG's interpretation is as follows. The rental agreement requires Illini to name JLG on an insurance policy for first-party coverage for physical damage to the rented equipment as a loss payee only, not an additional insured. Illini is required to name JLG on a policy for third-party coverage for damage to property owned by others and bodily injury to others as an additional insured.

¶ 51    In support of its interpretation, JLG relies on *Thompson* to raise a "*no* separate subparts" argument. (Each party believes *Thompson* supports its interpretation.) JLG argues that the rental agreement does not contain separate subparts, because the alleged headings are not preceded by letters such as "A" and "B," and the alleged subparts are all part of the same paragraph with no spacing between the alleged subparts. In JLG's view, because the agreement does not contain separate subparts, it must be read as a whole, and the reference to additional insureds does not apply exclusively to first-party insurance for damage to the rented equipment. The trial court subscribed to this theory, stating: "I believe the case law is quite clear that the provisions have to be read as a whole since they are in the same paragraph. If [the clauses] were separated in two separate subparts or if they were on different pages, that would be a different story."

¶ 52    Aside from its "no separate subparts" argument, JLG raises just one affirmative argument in favor of its interpretation.  This argument turns on a single phrase, "loss payee and/or additional insured."  JLG argues: "[The rental agreement's insurance provision] must necessarily be read as requiring JLG to be named as an additional insured with respect to coverage for liability to third parties due to the presence of the phrase, 'loss payee and/or additional insured.'"  As we will explain, JLG argues that certain components of the phrase "loss payee and/or additional insured" will be nullified unless we read the loss payee designation to pertain to first-party coverage for physical damage to the rented equipment and the additional insured designation to pertain to third-party coverage for property damage or bodily harm.

¶ 53    The remainder of JLG's arguments are aimed at distinguishing *Zurich* and *Athens*, two of the cases cited by Tokio.

¶ 54                                 D. *Thompson*

¶ 55    In evaluating each party's interpretation, we first look to *Thompson*, 241 Ill. 2d 428.  The trial court relied on *Thompson*, and each party believes *Thompson* supports its position. Tokio believes *Thompson* illustrates that, when interpreting a contract, we must honor subpart designations that set forth different requirements.  JLG agrees that *Thompson* illustrates that we must honor subpart designations that set forth different requirements.  However, JLG believes that *Thompson* is distinguishable in that, while the contract in *Thompson* contained subpart designations, the instant agreement does not.

¶ 56    In *Thompson*, the defendant engineering firms entered into a contract with a developer to design: (1) a roadway interchange; and (2) a bridge deck.  After the project was completed, the plaintiff and her family were in a car accident on the bridge deck resulting in severe injury and two fatalities.  The plaintiff sued the defendants for negligence, alleging that the defendants had

breached their duty of care by failing to design or recommend a safety feature known as a Jersey barrier on the bridge deck. The parties disputed whether the contract's "scope of services" provision gave rise to a duty to design or recommend a Jersey barrier on the bridge deck. The "scope of services" provision, section 2A, addressed the *roadway interchange*:

"A. Roadway Design

Final design and contract plan preparation for the Phase I, Stage A I–94/Grand Avenue interchange *improvements* will be provided. The proposed roadway *improvements* are as described below:

 • Redesign Ramp B to two lanes, but maintain one lane at merge to southbound I–94.

 • Provide lane drop recovery area on eastbound Grand Avenue east of Ramp B diverge.

 • *Improve* Ramp E alignment.

 • Proposed *improvements* are to tie to the widening of Grand Avenue, which is to be done by others.

Additional related services to be provided include drainage design, roadway lighting design, and utility adjustments." (Emphases added by the *Thompson* court.) *Thompson*, 241 Ill. 2d 428, 440-41.

The "scope of services" provision, section 2B, addressed the *bridge deck*:

"B. Structural Design.

Final structural design plans will be provided for deck *replacement* of the existing Grand Avenue bridge over I–94. Final structural design plans will also be prepared for a proposed

overhead cantilever sign truss on eastbound Grand Avenue, west of Ramp B." (Emphasis added.) *Id*. at 441.

¶ 57    The *Thompson* court determined that, as to the bridge deck, the defendants' only duty was to *replace* the existing structure. If the defendants had contracted to *improve* the bridge deck, the contract would have so stated. The court reasoned that the drafters' use of the words *improvement* when addressing the roadway interchange and *replacement* when addressing the bridge deck had been deliberate. Therefore, when completing the bridge deck, the defendants had a duty only to replace the existing structure, not to improve it with safety features such as a Jersey barrier. The court summarized:

> "[S]ection 2A of the contract uses the word 'improvements' in describing the scope of services concerning the [roadway interchange], while section 2B of the contract uses the word 'replacement' in describing the scope of services for the [bridge deck]. To interpret 'replacement' in section 2B to mean 'improvement' would render the word 'replacement' meaningless. A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used. [Citation.] Further, when parties agree to and insert language into a contract, it is presumed that it was done purposefully, so that the language employed is to be given effect. [Citation.] Because the parties used the term 'improvements' in section 2A of the contract, and used the term 'replacement' in section 2B of the contract, we presume that the parties chose the word purposefully, and will give effect to that language. It is clear the parties did not intend for the term 'replacement' to mean 'improvement.' " *Id*. at 442.

¶ 58    JLG's position, which the trial court accepted, is that *if* the rental agreement inserted the letter "A" before the heading "Physical Damage to Equipment," inserted the letter "B" before the heading "Bodily Injury/Property Damage; Responsibility to Third Parties," and added a space between the two clauses, *then* the rental agreement would contain subpart designations with different requirements.

¶ 59    We are not convinced.  The letters "A" and "B," while helpful, do not necessarily change the meaning of either heading.  Even without the letters "A" and "B," a reader might see that "Physical Damage to Equipment" and "Bodily Injury/Property Damage; Responsibility to Third Parties" pertain to different topics within the general umbrella of the insurance provisions.  Similarly, inserting a space between the two topics makes for easier reading, but it does not necessarily change the meaning of the provisions.

¶ 60    To illustrate that the meaning is not certainly and unambiguously different with or without the letters "A" and "B," or a space, we put the provisions as currently laid out beside the provisions as if they had been laid out as in *Thompson*.   The current layout is:

"Physical Damage To Equipment: All Customers must provide to [JLG], at the time [the] Equipment is rented, a certificate of insurance naming [JLG] as a loss payee and/or additional insured on said certificate [*sic*] evidence [*sic*] coverage for physical damage to the Equipment.   Such physical damage insurance covering the Equipment may [*sic*] be canceled or materially modified except upon twenty (20) days prior written notice to [JLG] at the branch office identified in this Agreement.   Bodily Injury/Property Damage; Responsibility to Third Parties: In addition to the foregoing physical damage insurance for the Equipment, Customer will, at Customer's expense, at all times during the term of this Agreement, maintain in force a commercial general liability insurance policy covering

bodily injury/property damage liability on the Equipment in an amount not less than one

million dollars ($1,000,000) combined single limit."

The *Thompson* layout is:

"A. Physical Damage To Equipment

All Customers must provide to [JLG] , at the time [the] Equipment is rented, a certificate of insurance naming [JLG] as a loss payee and/or additional insured on said certificate [*sic*] evidence [*sic*] coverage for physical damage to the Equipment. Such physical damage insurance covering the Equipment may [*sic*] be canceled or materially modified except upon twenty (20) days prior written notice to [JLG] at the branch office identified in this Agreement.

B. Bodily Injury/Property Damage; Responsibility to Third Parties.

In addition to the foregoing physical damage insurance for the Equipment, Customer will, at Customer's expense, at all times during the term of this Agreement, maintain in force a commercial general liability insurance policy covering bodily injury/property damage liability on the Equipment in an amount not less than one million dollars ($1,000,000) combined single limit."

¶ 61    There is not one magic stylistic indicator of a separation in topics.  Here, a topic heading with the first letter of each titular word capitalized, followed by a colon, substantive text, and then a period are at least arguably sufficient to delineate an isolated topic.  The rental agreement's insurance provision is not merely one undifferentiated sentence following the next, as JLG argued before the trial court and as the trial court accepted.  Rather, the rental agreement's insurance

provision at least arguably contains separate topic headings, each followed by a colon, substantive text, and then a period.

¶ 62     At the same time, the configuration here, placing all of the words and sentences into a single, continuous paragraph is also indicative of a single, individual part.  The layout here does not provide the obvious cues in topic breaks as did the layout in *Thompson*.  For example, it is not entirely clear where the second purported subpart ends.  If one looks only to the purported headings, it appears to continue until the next heading concerning power of attorney.  However, the content of the second purported subpart seems to deviate from a strict discussion of third-party coverage only and returns to discuss any type of insurance coverage, even referencing JLG, as highlighted below:

> "Bodily Injury/Property Damage; Responsibility to Third Parties: In addition to the foregoing physical damage insurance for the Equipment, Customer will, at Customer's expense, at all times during the term of this Agreement, maintain in force a commercial general liability insurance policy covering bodily injury/property damage liability on the Equipment in an amount not less than one million dollars ($1,000,000) combined single limit.  Such third party liability coverage shall be primary, and not excess or on a contributory basis, and shall provide coverage for liability for injuries and/or damages sustained by any person or person agents, sublessees or employees of Customer, and Customer's indemnity obligations herein.  Customer agrees to abide by all terms and conditions of said insurance.  *In the event of a loss, Customers, its agents and employees will cooperate fully with [JLG] and Customer's insurer in the investigation, prosecution and/or defense of any claim or suit arising therefrom and will do nothing to impair or invalidate the applicable [sic] insurance coverage.  [JLG] does not waive any claims or*

*rights hereunder.* The aforesaid Customer insurance obligation in no way limits Customer's ultimate liability hereunder. *[JLG] does not provide, extend, or afford any insurance coverage to Customer, and Authorized Operators of the Equipment or any other person under this Agreement.*" (Emphases added to sentences referencing JLG and potentially referencing any type of insurance coverage).

We have some doubt as to why the drafters discussed JLG's role in third-party claims if JLG was not an additional insured on a policy covering third-party claims. At the same time, the drafters could have merely intended to show that Illini, as the sole named insured on its third-party policy, is to cooperate with JLG's insurer, whoever that might be. There is nothing in the language that expressly states JLG is an additional insured under Illini's third-party policy, but, the highlighted language is not inconsistent with JLG being an additional insured.

¶ 63                                  E. Additional Points of Ambiguity

¶ 64    In addition to the ambiguities created by the layout and indefinite breaks in purported subparts, we discuss other points of reasonable dispute that prevent us from determining that either party's interpretation is unambiguously correct. First, we address the agreement's use of the phrase, "in addition to." The first sentence of the second purported subpart concerning third-party claims states that said coverage is "in addition to" and, therefore, in Tokio's view, is *separate from* the requirements of the previous purported subpart. The trial court, in contrast, did *not* believe that the "in addition to" language meant that the requirements of the second subpart were *separate from* the requirements of the previous subpart. The trial court believed that the phrase "in addition to" meant that, because Illini named JLG as an additional insured for first-party coverage, then it must also name JLG as an additional insured for third-party coverage. ("I believe that when read as a whole, the reasonable interpretation is that Illini must obtain commercial general liability

coverage in addition to the foregoing sentence which would necessarily include naming JLG as an additional insured.")  The trial court believed that the phrase "in addition to" meant that the requirements of the second purported subpart were to *mimic*, not be separate from, those in the first purported subpart.  We do not agree with the trial court that this is the only plausible interpretation, and, thus, the phrase creates an ambiguity.

¶ 65    Several points prevent us from determining that JLG is unambiguously correct.  The words "additional insured" appear only once in the entire provision, and they are contained in the purported subpart concerning first-party coverage for damage to the rented equipment, not third-party coverage for bodily injury to others as defense in the Wilda suit would require.  Most compellingly, the very sentence containing the words "additional insured" concludes with the direction that the additional insured (and/or loss payee) status be *for physical damage to the rented equipment*, not for damage to property owned by others or the bodily injury of others.  We understand JLG's point that we must look to every sentence in the paragraph to discern the overall meaning.  Still, the structure of the sentence itself establishes meaning.  The only sentence containing the words "additional insured" pertains to first-party claims for physical damage to the rented equipment, not to third party-party claims of property damage or bodily injury. Additionally, although Tokio forfeited this point, the agreement technically named ServicePlus as opposed to JLG.

¶ 66    Also, the agreement technically required JLG to be named on the certificate of insurance, not the policy itself.  *Zurich* and *Athens* show that being named an additional insured on a certificate of insurance is not the same as being named an additional insured on the policy itself. In *Zurich* and *Athens*, the court denied additional insured status based on a distinction between the certificate of insurance and the insurance policy itself.  In those cases, the underlying contract

between the parties required that one party name the other on the certificate of insurance to show that it had named it on the policy itself. The policy itself contained an additional insured endorsement that stated that additional insureds included those required by contract to be added as an additional insured. However, the endorsement also required that the additional insured be named directly on the policy itself, regardless of external contractual requirements. In *Zurich* and *Athens*, fatally, the relevant parties were not named as additional insureds on the policy itself. Moreover, the certificate of insurance contained a disclaimer that it was issued for informational purposes only and conferred no actual coverage rights to its holder. The *Zurich* and *Athens* courts held that, where the certificate of insurance refers to the policy and expressly disclaims coverage other than that contained in the policy, the policy governs the extent and terms of coverage. *Athens*, 2015 IL App (1st) 140006, ¶ 28; *Zurich*, 386 Ill. App. 3d at 102. The trial court in *Athens*, while bound by *Zurich*, was particularly troubled by the rule; it stated that it was counterintuitive to find that the drafters to a contract wanted a certificate of insurance but not the underlying policy. *Athens*, 2015 IL App (1st) 140006, ¶ 13. The appellate court was less troubled in following *Zurich*, noting that the party named on the certificate had been warned of the discrepancy by the certificate's disclaimer language. *Id.* ¶ 31.

¶ 67    JLG correctly notes that the instant case is distinguishable in many respects from *Zurich* and *Athens*. Here, the policy does not specify that the additional insured be must be named therein regardless of external contract requirements, nor does the certificate refer to the policy and expressly disclaim coverage other than that contained in the policy (though JLG does not cite to or discuss the exact language of the certificate here). Certain factors at play in denying coverage in *Zurich* and *Athens* are not at play here.

¶ 68    Therefore, Tokio's argument concerning the distinction between the certificate of insurance and the policy itself does not convince us that its interpretation is correct.  Nevertheless, Tokio's argument concerning the distinction between the certificate and the policy reaffirms our position that we certainly cannot find JLG's interpretation unambiguously correct.  Technically, the rental agreement here required JLG to be named on a certificate of insurance, not on an actual policy.

¶ 69    Finally, we are not convinced by JLG's argument that: "[The rental agreement's insurance provision] must necessarily be read as requiring JLG to be named as an additional insured with respect to coverage for liability to third parties due to the presence of the phrase, 'loss payee and/or additional insured.' "  Even if "additional insureds" are *typically* associated with commercial general liability policies covering third-party claims for property damage or bodily injury, as JLG claims, the caselaw does not prohibit the additional-insured designation on first-party property damage policies.  See, *Chatham Corp. v. Dann Insurance Co.*, 351 Ill. App. 3d 353, 355 (2004) (discussing a first-party property damage policy containing an additional insured endorsement).

¶ 70    JLG argues that certain components of the phrase "loss payee and/or additional insured" will be nullified unless we read the loss payee designation to pertain to first-party coverage for physical damage to the equipment and the additional insured designation to pertain to third-party coverage for property damage or bodily harm.  We do not necessarily agree, but, again, we set forth JLG's argument for the purposes of showing that there is enough merit and reason to prevent us from holding that *Tokio* is unambiguously correct and outright reversing.

¶ 71    JLG contends that the word "and" would be nullified.  It urges that, given that "loss payee" and "additional insured" mean different things, there must be a purpose to naming JLG both a loss payee and an additional insured, rather than just an additional insured.  If there is no purpose to

naming JLG both a loss payee and an additional insured, then the word "and" is nullified, and we should not interpret a contract in a way that renders a word a nullity. JLG contends that there would be no meaningful purpose if both designations pertained only to coverage for physical damage to the equipment, and not third-party coverage. JLG contends there *would* be a meaningful purpose if the loss payee designation pertained to physical damage to the equipment and the additional insured designation pertained to commercial general liability.

¶ 72    We are not wholly convinced. The phrase is not loss payee *and* additional insured. The phrase is loss payee *and/or* additional insured. This means that, one way or the other, JLG will be reimbursed for any damage to its equipment. Either Illini will designate it as a loss payee and JLG will receive a payment for the loss, or Illini will name it as an additional insured, and JLG may pursue payment directly from the insurer. Even if JLG is a loss payee, it may present its claims for property damage directly to the insurer, as Illini's limited power of attorney. ("Power of Attorney: Customer hereby grants and appoints to [JLG] a Limited Power of Attorney to present insurance claims for property damage to Customer's insurance carrier if the equipment is damaged during the term of this Agreement and to endorse Customer's name on insurance payments for charges or damages.") We do see JLG's point, however, that naming JLG as an additional insured for first-party coverage for damage to the rented equipment would make the power of attorney provision redundant. An additional insured can already present damage claims directly to the insured; the additional insured does not need to have the power of attorney to do so.

¶ 73    JLG also argues that the word "loss payee" would be nullified unless we attribute the word "loss payee" as referring to first-party coverage and the word "additional insured" as referring to third-party coverage. JLG appears to argue that, should Illini ultimately purchase, rather than rent, the equipment, JLG would no longer be a loss payee, because it would no longer own the

equipment. However, it is not clear to us why this constitutes a nullity as opposed to a simple expiration of terms.

¶ 74    In sum, due to ambiguities in the layout of the rental agreement and in the indefinite breaks in subject matter, as well as other problematic phrases within the rental agreement, we cannot find either party's interpretation to be unambiguously correct. Therefore, we vacate the grant of summary judgment to JLG and remand for the consideration of extrinsic evidence. We recognize that Tokio initially argued that, were we to find the rental agreement ambiguous, we should simply resolve the ambiguity against JLG as the drafter of the rental agreement. In its appellate brief, however, Tokio requests that the court remand for the consideration of extrinsic evidence (following which any *remaining* ambiguity would be resolved against JLG as the drafter).

¶ 75    Should the issue arise on remand, we also briefly address, and reject, Tokio's alternative argument that, even if JLG is an additional insured, Tokio is not required to defend JLG in the underlying Wilda suit, because the Wilda suit does not arise out of Illini's "work" as required by the insurance policy. The policy's definition of work included Illini's obligation to provide warnings and instructions. The trial court rather summarily rejected this argument, as do we.

¶ 76    The threshold for pleading a duty to defend is low. *American Economy Insurance Company v. DePaul University*, 383 Ill. App. 3d 172, 178 (2008). An insurer's duty to defend the insured is much broader than its duty to indemnify the insured. *Id*. Any doubt as to the insurer's duty to defend is to be resolved in favor of the insured. *Id*.

¶ 77    Specifically, Tokio argues that the Wilda suit does not arise out of Illini's "work" as required by the insurance policy, because: (1) Illini is not mentioned by name in the underlying Wilda suit; and (2) JLG cannot solely rely on its own third-party complaint against Illini to establish facts that would trigger a duty to defend. Briefly, a party need not be mentioned by name

in the underlying suit to trigger coverage. *DePaul University*, 383 Ill. App. 3d at 176-78. Also, JLG does not rely *solely* on its own third-party complaint against Illini to establish facts that would trigger coverage. The parties conducted discovery prior to moving for summary judgment, and much evidence shows that Illini had sole control over instructing Area Erector's how to safely use the lift, not JLG. Tokio does not deny that Illini had sole control. Rather, Tokio disputes whether a proper foundation was ever laid such that the evidence might be considered. It is not clear that Tokio raised this argument before the trial court, and it is, therefore, forfeited. Even if it did raise the argument, Tokio must agree that the *rental agreement* was properly admitted into evidence. The rental agreement required Illini to train anyone who would be using the lift. "Work" is defined to include an obligation to provide warnings and instructions, which corresponds with the rental agreement's requirement to train anyone who would be using the lift. This language satisfies the low threshold that the alleged facts potentially fall within the scope of the policy.

¶ 78                                    III. CONCLUSION

¶ 79     For the reasons stated, we vacate the trial court's grant of summary judgment to JLG, affirm the denial of summary judgment to Tokio, and remand for the consideration of extrinsic evidence.

¶ 80     Affirmed in part and vacated in part. Cause remanded.